GEORGE DALTON, by JAMES DALTON, His Next Friend, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY et al., Appellants.

In Banc, February 15, 1919.

1. **NEGLIGENCE: Trespasser: Continuous User of Switch Yards.** Continuous user of switch yards by the public for such a length of time as to justify imputing implied notice, requires the railroad company to be on the lookout for persons who might be on the tracks. Under such circumstances the company has no right to expect a clear track; but if by the exercise of reasonable care per-

sons on the track can be seen and their injury averted, and such reasonable care is not exercised, the company is liable in damages for the consequent injuries.

*Held*, by FARIS, J., dissenting, that a showing of such continuous user of a switch yard for walking is not sufficient to require a lookout to be kept for persons on detached cars in the yards, and does not create an implied consent for boys to use and play upon the cars. Nor can the duty to keep a lookout for a trespasser whose presence is neither known nor suspected arise in the very teeth of a continuous and perennial effort of the railway company to prevent such user.

2. ———: ———: **City Ordinance and Statute.** Neither a city ordinance nor a statute which forbids any person from climbing upon moving cars or cars "forming a part of a train of cars" has any application to a boy who was sitting on a car forming a part of a string of several detached cars standing in the switch yards.

3. ———: ———: **Humanitarian Rule.** An injured trespasser, under the humantarian rule, has a right of action for damages, if the defendant railroad company saw and knew his peril and then injured him, when by the exercise of ordinary care on the part of its employees the injury could have been averted.

4. ———: ———: ———: **Contributory Negligence: Seeing Peril and Duty to See.** Contributory negligence will not bar a recovery in a case falling within the humanitarian rule. If the injured child negligently placed himself in a place of peril, and the defendants (1) saw him in such place and failed thereafter to use reasonable care and caution to prevent his injury, they are liable, or (2) if the place, though a switch yard, was one where children were to be expected and therefore requiring the railway company to be on the lookout for children upon or around the cars, it was the company's duty to see whether or not children were there and prevent injury to them.

5. ———: **Duty to Warn Trespasser.** *Held*, by GRAVES, J., that, under the humanitarian rule, a railroad company is not required to give warning to a trespasser upon standing cars in its switch yards before it can move them, although, because of continuous user of the yards as a play ground and the cars in connection therewith, it was required to keep a lookout for such trespassers. So that an instruction which tells the jury that it was the duty of the railway company, whether its servants saw plaintiff or not and whether by the exercise of ordinary care they could have seen him or not, to give warning, so that plaintiff and other trespassers on the detached cars standing in the switch yards and against which the trainmen backed their engine, could have reached a place of safety, goes further than the humanitarian rule, and is error.

*Held*, by BLAIR, J., concurring in the result, with whom WIL-LIAMS, J., concurs, that, in the performance of the duty to keep a lookout to discover a dangerous situation, it is not the exercise of reasonable care for the trainmen to put themselves in a position from which it is physically impossible to see a person in a place of peril. If the place has been subjected to such user as to give notice of the probable presence of persons there, it is the duty of the trainmen to use reasonable care to discover their presence there and to avert injury.

Appeal from Montgomery Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED AND REMANDED.

*Mahan, Smith & Mahan, N. S. Brown* and *Jos. W. Jamison* for appellants.

(1) Upon the physical facts, defendant's agents could not see George Dalton at the time of his injury, and all of plaintiff's evidence tending to show that he could be seen is contrary to natural law and should therefore be disregarded. Clarke v. Railroad, 242 Mo. 606; Kelsay v. Railroad, 129 Mo. 376; Nugent v. Milling Co., 131 Mo. 253; Daniels v. Railroad, 177 Mo. App. 281. Plaintiff made Burns, appellant's engineer, a witness in his own behalf. Burns testified it was impossible for him to see Dalton, looking from the cab window from his engine on the bluff side, because of curves in the track; because his view was partially obstructed by a bunk car standing on a stub track close by; because of the varying heights of the cars in the train, and the further fact that the car on which Dalton was sitting was more than a quarter of a mile distant from his engine. No observation had been or was made by any other witness who testified on behalf of plaintiff from the same or a similar position from that occupied by Burns under similar circumstances and conditions, and plaintiff therefore offered no testimony sufficient in law that tended to contradict Burns's testimony, and plaintiff is bound by what he said. Burge v. Railroad, 244 Mo. 93; Armstrong v. Denver & R. F.

Railroad Co., 203 S. W. 246; Hawkins v. Railroad, 135 Mo. App. 533. (2) Plaintiff was a willful trespasser. He was neither an invitee or licensee and the humanitarian doctrine cannot be invoked in his behalf. Papich v. Chicago, M. & St. P. Ry. Co., 167 N. W. 686. "It is the settled law, as to infants as well as adults, that if one is injured by going under cars which may be moved at any time, he must be dealt with as a trespasser." Thomas v. Railway, 93 Iowa 253; Bourrett v. Railway, 152 Iowa 582; Purcell v. Railroad, 117 Iowa, 667. "Since no duty to the trespasser arises until he is actually seen, it follows of necessity no care is due him before his peril is known. On that theory the general rule has been worked out, that an owner of property trespased upon, is not liable for an injury resulting from the trespass merely because care might have successfully guarded against such injury." Papich v. C., M. & St. P. Ry., 167 N. W. 688. See Hounsell v. Smyth, 7 C. B. (N. S.) 731; Hargreaves v. Deacon, 25 Mich. 1; Gavin v. City, 97 Ill. 68; Bishop v. Railroad, 14 R. I. 318. "It follows that there was here no duty to give warning that the cars were about to be moved." Brackett v. Railway, 111 S. W. (Ky.) 710; Schmidt v. Railway, 181 Fed. 83; Pa. Railway v. Martin, 111 Fed. 586. "A railroad company owes no duty to trespassers in its yards, regardless of age, except that of not wantonly or recklessly injuring them after having discovered them to be in peril." Barney v. H. & St. J. Railroad Co., 126 Mo. 372; Ruschenburg v. Ry. Co., 109 Mo. 112; Curley v. Mo. Pac. Ry. Co., 98 Mo. 19; Wencker v. M. K. & T. Ry. Co., 169 Mo. 593. A "mere licensee" is one who is clothed with no right and to whom no invitation has been extended, but who is upon the premises of another by permission or acquiescence. Norfolk & W. Ry. Co. v. Denny, 106 Va. 383. No one can become such licensee on premises of a railroad company or on its trains while standing at a station without the consent of the company, either express or implied. Berry v. Mo. Pac. Ry. Co., 124 Mo. 223; Furey v. N. Y. Cent. H. R. Co., 67 N. J. L. 270.

(3) George Dalton was a law breaker and a trespasser, and cannot recover in this case. Defendants' demurrer to the evidence should have been sustained, and instruction for verdict for the defendants given, and the court erred in failing to do so. Barney v. Railroad, 126 Mo. 391; Kelly v. Benas, 217 Mo. 12; Hall v. Railroad, 219 Mo. 586; Giles v. Railroad, 169 Mo. App. 37; Barker v. Railroad, 98 Mo. 53. At the time of his injury he was acting in violation of an ordinance of Hannibal, and was guilty of a misdemeanor under each section. Being a law breaker, he could not, under any circumstances become a licensee of defendants. They only owed him the duty of not wantonly or willfully injuring him after his peril was discovered. Wencker v. M., K. & T. Ry. Co., 169 Mo. 600; O'Donnell v. Railroad 197 Mo. 122; Feeback v. Railway Co., 167 Mo. 215; Carrier v. Railway Co., 175 Mo. 481. And this rule is not changed because Dalton was a minor. Barney v. Railroad, 126 Mo. 392; Hobert v. Collins, Lavery & Co., 80 N. J. L. 425; Anternoitz v. Railroad, 193 Mass. 542; Seeley v. Railroad, 157 Mich. 688.

*W: A. Dudley, Chas. W. Wilson, O. H. Avery* and *Shepard Barclay* for respondent.

(1) Dalton was not a law-breaker under the city ordinance or the statute, because not within the terms of either on the facts in evidence. R. S. 1909, sec. 4874. (2) The fourth instruction for plaintiff was correct; because, even though plaintiff may be guilty of negligence, contributing to his injury, it is no bar to his recovering therefor. "If the defendant could, in the result, by the exercise of ordinary care and diligence, have avoided the mischief which happened, the plaintiff's negligence will not excuse him." Radley v. Railway, 1 App. Cas. (L. R.) 754; Inland Nav. Co. v. Tolson, 139 U. S. 558; Adams v. Ferry Co., 27 Mo. 95; Huelsenkamp v. Railway 37 Mo. 552; Morrissey v. Ferry Co., 43 Mo. 384; Karle v. Railway, 55 Mo. 484;

Meyers v. Railroad, 59 Mo. 231; Klockenbrink v. Railroad, 81 Mo. App. 356, 172 Mo. 678; King v. Railways, 204 S. W. 1129; Beard v. Railroad, 272 Mo. 142. (3) Plaintiff's fourth instruction was correct in stating that (on the facts supposed as to long user this railway yard as a playground for children and thoroughfare for the public) it was the duty of defendants "to exercise ordinary care to ascertain whether anybody was upon said tracks or cars and to exercise care to notify any person on or about said tracks or on or around 'said cars' of the proposed movement of cars on said sidetrack, to enable them to get to a place of safety." Tutt v. Railroad, 104 Fed. 741 (similar facts); Felton v. Aubrey, 74 Fed. 350; Garner v. Trumbull, 94 Fed. 321; Cahill v. Railroad, 74 Fed. 285; Erie Railroad Co. v. Burke, 214 Fed. 247; Barry v. Railroad, 92 N. Y. 293; Kay v. Railroad, 65 Pa. St. 269; Lamphear v. Railroad, 194 N. Y. 172; Taylor v. Del. & H. Co., 113 Pa. St. 174; Francis v. Railroad, 247 Pa. St. 425; Mason v. Railway, 89 Wis. 151; Carmer v. Railway, 95 Wis. 513; Gesas v. Railroad, 33 Utah, 156; Ashworth v. Railway, 116 Ga. 641; Railroad Co. v. Popp, 27 S. W. (Ky.) 992; Ervine v. Railroad, 158 Mo. App. 1; Mitchell v. Railroad, 34 Atl. 674; LeMay v. Railroad, 105 Mo. 351. As to such places as that in question, the same principles as to the duty to warn, before discovery, apply as in the case of railway track crossings; as many of these decisions cited assume, and some express. R. S. 1909, sec. 3140. (4) Respondent asks the court to reconsider the ruling as to "unseen trespassers," and to declare the law to be that in such circumstances as require the railway operatives to anticipate the presence of children where cars may strike them, it becomes the duty of such operatives to exercise ordinary care to warn those who may be in danger, as well as to use care to discover their presence. Such places are not different from regular track crossings, so far as concerns the duty to warn of train movements thereon. R. S. 1909, sec. 3140; Beard v. Railroad, 272 Mo. 155; Klockenbrink v. Railroad,

81 Mo. App. 356, 172 Mo. 678; Wilkins v. Railway, 101 Mo. 106; Fusili v. Railway, 45 Mo. 106; Thompson v. Railway, 93 Mo. App. 555; Lynch Case, 111 Mo. 601; Brown v. Railroad, 50 Mo. 464; Clark v. Railway, 64 Mo. 440; Ransom v. Depot Co., 126 S. W. 785; Kreis v. Railroad, 131 Mo. 544; Railway v. Means, 104 N. E. 787; Klotz v. Railroad, 68 Minn. 341; Cooper v. Railway, 66 Mich. 261. (5) The fourth instruction for plaintiff was sound in stating the duty of defendants. It did not submit facts for a verdict thereon; but it announced the principles of law as to defendants' duty to exercise reasonable care to warn as well as to discover persons in peril of being injured by train movements in a place where defendants were bound to anticipate their presence quite as much as at an established highway crossing of the track. R. S. 1909, sec. 3140. See decisions cited above. "The rationale of the rule requiring special precautions in backing trains over crossings or other places where persons are likely to be is in the increased danger to which they are subjected." Klotz v. Railroad, 68 Minn. 341; 2 Shearman & Red. on Negligence (6 Ed.), sec. 471, p. 1179. (6) "Negligent ignorance is in law equivalent to knowledge." Ashworth v. Railway, 116 Ga. 635; Rine v. Railway, 100 Mo. 235. (7) Plaintiff was not bound by all the testimony of defendants' engineer, Brown, whom plaintiff introduced as a witness: "this does not preclude him from establishing a case by other testimony, even though it is contradictory of that which he first offered." Phelan v. Paving Co., 227 Mo. 711; Maginnis v. Railroad, 268 Mo. 675; Knopp v. Wagner, 195 Mo. 637; State v. Shapiro, 216 Mo. 370; Brown v. Wood, 19 Mo. 475; Dunn v. Donnaker, 87 Mo. 597. (8) Where facts admitted by defendants or proven by undisputed testimony indicate that the judgment below is "for the right party" it should be affirmed, without regard to any supposed errors. Here, on the admitted facts as to user of these railways premises, absence of watchman (or other employee) near the place where the plaintiff was sitting on the car, and absence of any

warning or notice to plaintiff of the switching move-
ment, defendants were liable. Redman v. Adams, 165
Mo. 71; State v. Adams, 75 Mo. 605; Commiskey. v.
McPike, 20 Mo. App. 82; Walsh v. Exposition Co., 101
Mo. 534; Lancaster v. Collins, 115 U. S. 227; King
v. King, 155 Mo. 406; Woody v. Railway, 104 Mo. 678;
Burns v. City, 131 Mo. 372; R. S. 1909, secs. 1850,
2082.

GRAVES, J.—In an action bottomed upon negli-
gence, the plaintiff, through his next friend, recovered a
judgment against the defendants for $22,500, from
which this appeal was taken. At the date of the accident
George Dalton was a rather bright boy past the age
of twelve years.

In the switch yards in the northern part of Hanni-
bal, Missouri, is a track running near the bluff, which
track is the west track of those yards. To the west of
this track is a public road, and across this road,
close in to the bluff, is a store and some residences.
These switch yards are a quarter of a mile or more in
length, and lie between the public road above men-
tioned and the Mississippi River. Plaintiff and another
boy were upon a car then standing upon this west
switch-yard track (near the north end thereof) and
was knocked therefrom by the force of a coupling or
running together of other cars with the bunch of cars
where plaintiff was located. In his fall he was thrown
under the wheel of the car and both arms cut off. Ir
an attempt to obviate the question of the plaintifl
being a trespasser (pure and simple), the petition al-
leges at great length sundry alleged usages, as follows:
that said switch yards were unenclosed; that the in-
habitants along this public road obtained their water
from a spring near the river and from the river;
that in the yards for some years there had been a sand-
digger, which was attractive to children when it was
in operation; that for a number of years there had
been a constant and continuous use of these yards by
the citizens, including children; that there was (oppo-

site these dwellings and store) a swimming pool in the
river, which was much used by boys at the season of
this accident, and these boys daily crossed these yards;
that for years there had been a continuous use of these
yards by the public going from north to south through
them; that for years these yards had been continuously
used by children as a playground; that for years
children and especially boys were continuously in,
around and upon the cars standing in this switch yard;
that defendants had knowledge of all these conditions.

The petition then charges the following as negli-
gence upon the part of the defendants: (1) that plain-
tiff could have been seen in his perilous position by the
train crew which coupled up the cars in time to have
warned him and saved him; (2) failure to keep a
lookout or guard in the switch-yards to warn plaintiff
and others of the movement of cars; (3) failure to
fence the yards, so as to exclude persons therefrom,
especially children; (4) failure to sound bell or whistle
or otherwise warn persons in such yards, that cars
were to be moved; (5) the coupling of the cars to-
gether with unnecessary force; and (6) failure of
defendant's servants to use ordinary care to see plain-
tiff's perilous position.

After unsucessful motions to strike out large por-
tions of the petition the defendant answered: (1) gen-
eral denial; (2) contributory negligence upon the part
of George Dalton; (3) contributory negligence upon
the part of the father and mother of George Dalton;
(4) that George Dalton was a trespasser, and defend-
ants had no reason to believe that he would be upon a
car located upon private property, and (5) that George
Dalton was at the time of his injury on the car in vio-
lation of a city ordinance of the City of Hannibal, which
ordinance is duly pleaded.

Reply was in the nature of a general denial.

For the plaintiff the principal instructions read:

"3. And the court further instructs the jury that
if they find from the evidence that at the time
the plaintiff received his injuries and for a number of

years prior thereto the switch yards and railroad tracks where the plaintiff received his injuries had been daily used by large numbers of persons as a passway in going from one point to another in that vicinity and that numbers of people daily walked over, upon, across and along said tracks and at all hours of the day, and that at said time and for a number of years prior thereto, women and children were accustomed daily to travel on said tracks, gathering coal which had fallen from the cars on to said tracks, and if the jury further find from the evidence that at the time the plaintiff received his injuries and for a number of years prior thereto, children and young boys had been and were in the habit of congregating in said switch yards and tracks and using the same as a play ground, daily playing in said switch yard upon and along said railroad tracks and on and around the cars standing on said tracks, and you further find from the evidence that the agents, servants and employees of the defendants who did the switching and handling of cars in said switch yard or tracks knew that people were so in the habit of daily using said switch yard and tracks as a passway and knew that children and young boys were so in the habit of daily using switch yard and tracks as a play ground, and were accustomed daily to play in and about said switch yard and on, around and about the cars standing on said tracks, then it was the duty of the defendants, their agents, servants and employees, when engaged in switching or moving cars on said sidetrack, to exercise ordinary care to ascertain whether anybody was upon said tracks or cars and to exercise care to notify any persons on or about said tracks or on or around the cars standing on said side-track or in any place of danger, of the proposed movement of cars on said sidetrack, to enable them to get to a place of safety.

"And if the jury further find from the evidence that at the time the plaintiff received his injury, the plaintiff, George Dalton, was a boy about twelve years of age and was sitting on an empty car which

was standing on said sidetrack, and that the agents, servants and employees, while plaintiff was so sitting on said stationary car, without any warning or notice to the plaintiff, caused other cars to be switched on to said sidetrack and propelled with such violence and force against the cars already standing on said sidetrack as to knock the plaintiff off of said car and cause said cars to run over plaintiff's arms and produce the injuries complained of, and if you further find from the evidence that the agents, servants and employees who switched said additional cars to said sidetrack, at the time the plaintiff received his injuries, saw the plaintiff sitting on said car standing on said sidetrack, or by the exercise of ordinary care could have seen him in time to have warned the plaintiff of his danger and thus have avoided injuring him, but neglected to warn the plaintiff, then the jury should find in favor of the plaintiff and assess his damages at such sum as the jury may believe from the evidence will compensate plaintiff for the injuries sustained, not exceeding the sum of fifty thousand dollars, notwithstanding the jury may further find that the plaintiff was a trespasser and was guilty of negligence in being on said car at the time, and notwithstanding the jury may also further find that the plaintiff, George Dalton, was on said car at the time of his injuries in violation of the provisions of the ordinance of the City of Hannibal produced in evidence.

"4. And the court further instructs the jury that if they find from the evidence that the defendants knew at the time the plaintiff was injured that children and young boys were accustomed daily to play on said sidetracks and on and around the cars standing on said sidetracks, as set forth in a preceding instruction, then it was the duty of the defendants before switching the cars on said sidetrack to take reasonable care to see that said track was clear and to notify or warn any such child or boy as might be upon said sidetrack or cars standing thereon, in time to enable them to es-

cape the dangers resulting from the switching of cars on said track.''

We have given at length the grounds of alleged negligence as well as the two main instructions for plaintiff, to the end that plaintiff's theory of the case may fully appear. Questions raised and the evidence bearing thereon will be noted in the opinion.

I. An important question in this case is the status of the plaintiff at the time of his injury. He was at the time in the private switch yards of defendants, and this fact, standing alone, would make him a tres-

Trespasser. passer, pure and simple. But this fact does not stand alone. There is proof of the continuous use of the switch yards by boys, and also the fact that boys played in, upon and around the standing cars in the switch yard. There is also in evidence an ordinance of the City of Hannibal, which reads: ''Any boy under the age of eighteen years, who shall in this city, without having lawful authority to do so, mount or climb upon, enter or hang to, any freight, gravel, baggage, hand or passenger car, or locomotive engine, when the same is in motion, or is attached to or forming a part of any train of cars, or to any locomotive engine, whether the same is in motion or standing upon any railroad track, shall be deemed guilty of a misdemeanor.''

By the defendants this ordinance is urged on the evident theory that a law-breaker cannot occupy the status of a licensee, and would not be entitled to the protection of a licensee. We need not discuss this theory, because the facts shown do not bring the plaintiff within the terms of the ordinance. The plaintiff was sitting upon a car, which constituted one of a string of several cars, but this string of cars was not attached to an engine, or otherwise ''forming a part of any train of cars.'' When this ordinance is closely studied, it is apparent, that its purpose is to punish boys who mount or climb upon moving cars, or cars in a train, which, although standing still, would be moved as

trains are usually moved. A few cars coupled together, but standing off to themselves, on a sidetrack, are not cars "attached to or forming a part of any train of cars," within the meaning of this ordinance. The first part of the ordinance relates to moving cars or engines solely, and the latter part, in our judgment, has reference to a car in a made-up train (with engine attached) which was liable to be put in motion any time. This is the most that we can make out of this ordinance. In this view of the ordinance plaintiff was not violating it at the time of his injury. He was not a lawbreaker so far as the ordinance is concerned.

We are also cited to Section 4874, Revised Statutes 1909, the material portion of which reads: "If any person, minor or adult, shall climb upon, hold to or in any manner attach himself to any locomotive engine or car, while the same shall be in motion, or running into or through any city or town in this State, he shall be deemed guilty of a misdeameanor."

This statute has no application. It applies to moving cars, and this car was not a moving car when boarded by the plaintiff. So that neither the ordinance, nor the statute in any way effect the status of the plaintiff, and we are relegated to the facts to fix such status. The case does not fall within the rule announced by SHERWOOD, J., in Barney v. Railroad Co., 126 Mo. 372. In that case the boy hung on to a moving car in a train of cars and was injured. In so doing he violated both the statute, supra, and a city ordinance of the City of St. Joseph. Under these facts Judge SHERWOOD said:

"But plaintiff, in the particular act which resulted in the accident, was a *trespasser*, made so by the statute as well as by the ordinance of St. Joseph, Section 3927, Revised Statutes 1889, makes it a misdemeanor for 'any person, minor or adult, to climb upon, hold to or in any manner attach himself to any locomotive engine or car, while the same is in motion, or running into or through any city or town in this State.' The ordinance is of similar import.

"Plaintiff being a trespasser, a violator of law, could have no ground of recovery based on his own dereliction. But it is claimed for plaintiff that these regulations of the law do not apply to 'babies.' While the law may not apply in a *criminal* proceeding to a child of very tender years, yet, still for the purpose of a *civil* action, the consequences of the unlawful act must be the same in the case of an *infant* even of very tender years, as in the case of an *adult*. In a word, the act of the infant in consequence of his tender years is, though *non-criminal*,· yet is *wrongful* in the sense of being an invasion of the rights of another, just as much so as though done by an adult. And a landowner is under no duty to a mere trespasser to keep his premises safe; and the fact that the trespasser is an infant does not raise a duty where none otherwise exists. [Frost. v. Railroad, 64 N. H. 220, and cases cited.]''

We have no occasion to discuss this rule in the instant case, because as above indicated neither the statute nor the ordinance was violated in this case. If it be contended that a trespasser can never have a right of action, and that the rule, supra, so holds, then we would have to differ. The facts of that case are not the facts of this case, and the opinion in that case must be read in the light of the facts. Even a trespasser, under the humanitarian rule, would have a right of action, if the defendant railway company saw and knew his peril, and then injured him, when by the exercise of ordinary care, the injury could have been avoided. But of this later.

The facts for the plaintiff tend to show a user of these yards by pedestrians (both in crossing the tracks from the public road or bluff to the river, and up and down the tracks from the south to the north) of some years standing. The facts also tend to show a user of these switch yards by children as a playground, and in that connection the use of standing cars, and this user was of some years standing. A swimming pool in the river took many boys across the yards, and a sand-

digger (somewhat attractive to children when in operation) was in this yard (or adjacent thereto) and children watched its operation. Boys, for several years, had continuously played in, around and upon standing cars, in these yards, as the evidence for the plaintiff would tend to prove, The time of such user was of sufficient length for defendants, their agents and servants, to have been fully advised of such use. As to the use of the railroad tracks the case law of this State was reviewed in Ahnefeld v. Railroad, 212 Mo. 280. At page 300 of that volume Fox, J., uses this language: ''It is immaterial as to how you denominate the persons who use the track, whether it is said they were invited by the railway company or whether it is said they were licensees, or whether it was a habit and custom to use the track, or whether you denominate them as trespassers; the controlling fact is whether there has been such use of the track as a passway or footpath by the public as to afford reasonable grounds to the operatives of the train upon such track to expect or anticipate the presence of persons so near the railroad track as to endanger them. A careful consideration of all the cases to which our attention has been directed and of which counsel so earnestly complained, will demonstrate that in their last analysis the final conclusion is predicated and the rule announced upon the main fact that the operatives of the railway company at certain points along its railway had reasonable grounds, by reason of the continuous use of the track at that point by the public, to expect or anticipate the presence of persons so near the railroad track at such points as to endanger them; hence, followed the just, fair and reasonable rule that under such circumstances it would be the duty of the operatives to keep a lookout for the presence of such persons and to use ordinary care and caution in avoiding any injury to them.''

The doctrine is, that continuous user for such a time as to enable implied notice to the railroad to be imputed, requires the railroad to be upon the lookout. Such railroad has no right to expect a clear track, and

proceed upon the theory of a clear track. Such user requires the railroad to be on the lookout for persons who might be upon the track, and if by the exercise of reasonable care, such persons could have been seen, and the injury averted by the exercise of reasonable care, then, if injury happens, the railroad may be held liable. So too, we think that if children have been playing in, upon and around the standing cars in a switch yard, so continuously and for such length of time, that the employees of the railroad should have known of this user, then there is imposed upon the railroad the duty of keeping a reasonable lookout for such children. The case for plaintiff seems to have been partially submitted on this theory, or better stated, the plaintiff has attempted to place his case to the jury on this theory, but has added another theory.

Granting then, that it was the duty of the defendant to keep a lookout for children upon these standing cars, how stands the case? Of the several questions herein involved we speak later.

II. Plaintiff was a bright boy nearly thirteen years of age. He had been told by his father, and the city officers, of the danger. He says in his own testimony that he knew of the danger of being on these cars owing to the switching of them in the yards. His counsel do not urge that he was not guilty of contributory negli-. gence, but plant themselves upon the doctrine of the humanitarian rule, to which they say contributory negligence is no defense. That contributory negligence will not bar a recovery in a case falling within the humanitarian rule is now well settled law in this State. So that in this case, although the plaintiff had negligently placed himself in a place of peril, yet if the defendants (1) saw him in such place of peril, and failed thereafter to use reasonable care and caution to prevent his injury, they would be liable, or (2) this being a place where defendants were required to be on the lookout for children around and upon the cars, and where

*Duty to Warn Trespasser.*

children were to be expected, it was the duty of the defendants to use reasonable care to see whether or not children were there, and to prevent injury to them.

The real question is whether or not the two instructions quoted in our statement properly present the case. The two instructions when read together present the case to the jury on two theories, (1) that if the defendants saw, or by the exercise of ordinary care could have seen, the plaintiff, in time to have warned him, or otherwise to have averted the injury, and did not do it. then the defendants were liable, and (2) that if the user was shown, then it was the duty of the defendants to give notice before switching cars, to the end that children playing around or upon them might get to a place of safety, and a failure to notify was negligence.

In so far as these instructions go to the humanitarian rule, they are all right, but the question is whether or not they do not go beyond that rule, and ground an action on primary negligence as well. It must be conceded that under the facts shown it was defendant's duty to be on the lookout for children, and if by the exercise of ordinary care it could have seen the plaintiff in a position of peril in time to have averted the accident by the exercise of ordinary care, or if the defendants, as a fact, did see him, in time to have avoided the accident by the exercise of ordinary care, then they are liable notwithstanding the fact that the plaintiff was negligent in being where he was at the time of the accident. This is the humanitarian rule. This is the rule which excludes from view the contributory negligence of the plaintiff. But do these instructions stop there? We think not. They go further and say that it was the duty of defendants (whether they saw plaintiff or not, and whether by the exercise of ordinary care they could have seen him or not) to give warning, so that plaintiff or others in peril could have gotten to a place of safety. If the defendants owed the plaintiff the duty of giving a warning (whether they saw him or not), the failure was what

might be termed primary negligence, as distinguished from the negligence chargeable to a defendant under the humanitarian rule. To such negligence contributory negligence may be invoked as a defense. But the question really goes deeper in this case. Is there an obligation to give warning to unseen trespassers? By this we intend to include trespassers who ought to have been seen by the exercise of ordinary care, if at places where defendant is required to be upon a lookout for persons on their cars. We are cited to no case from this court holding that a railroad company must give notice to trespassers of its intention to move standing cars upon switch tracks. Without a shown user the defendant is not obliged to keep a lookout for trespassers. The user merely imposes the additional duty of a prudent lookout for persons who are likely to be in peril. To my mind it does not impose the duty of giving warning to unseen persons, who are trespassers. The rule of humanity has never been extended that far by any ruling of this court. The case of Featherstone v. Railroad, 174 Mo. App. 664, is cited, but it is not in point. In that case the plaintiff proved that the railroad had a custom of sending a brakeman ahead to notify all persons on or about the cars (including children who were playing in the yards) that the cars would be moved, and what is said in that case is in view of this custom. That case is not this case. To hold that warning of the movement of cars must be given to unseen trespassers would be to place trespassers in the category of employees. The humanity rule has never been so applied to our knowledge. This court has been liberal with the rule, and rightfully so, but it is going too far to say that a railroad must give warning before it can move cars in its own switch yard, because perchance there might be a trespasser in or upon such cars. If the cars are frequented by trespassers, and such a user is shown, the duty to be on the lookout for them is imposed, but the rule has never gone further.

These instructions for the plaintiff go further than we have gone under the humanitarian doctrine. In so far as they require the defendant to. be on the lookout for trespassers, they' are all right under the facts of this case. Continuous trespassing does not make the person any the less a trespasser, but the long continued trespassing does give knowledge to defendants, and this knowledge imposes the duty to be on the lookout for such trespassers. In other words, if the defendants saw, or by the. exercise of reasonable care could have seen the plaintiff in time to have prevented the injury, then the conceded negligence of the plaintiff would not preclude a recovery. But the instructions do not stop there. They go further as above indicated. For this error the judgment will have to be reversed and the cause remanded.

It might not be out of the way to suggest that the petition is unnecessarily long and verbose, and in a way lacking in pointed statements of the real grounds of plaintiff's action. Under the facts plaintiff's contributory negligence would bar him but for the humanitarian rule, and his petition should ground his cause on that rule.

Other questions urged may not reappear upon the rehearing of the case. Let the judgment be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of Graves, J., in Division One is adopted by Court in Banc. *Bond, C. J.,* concurs in paragraph one and the result, but dissents to paragraph 2; *Blair* and *Williams, JJ.,* concur in result; *Walker* and *Woodson, JJ.,* dissent; *Faris, J.,* dissents in a separate opinion.

BLAIR, J. (concurring.)—Paragraph II of the opinion holds there was error in instructions. In approaching a spot which has been subjected to such user as to give constructive notice of the probable presence of persons in a place of danger, it is the duty of operatives in charge of a train to use reasonable

care to discover the presence of such persons and avert injury to them. What is reasonable care in a particular case is dependent upon surrounding circumstances. I fear paragraph II possibly is open to the construction that in any case it is a defense if the operatives were actually in a position from which they could not see if they had looked. Can the company place its employees on or near the engine, back a string of cars a half mile long around a curve, the cars taking such a position that the spot where persons are to be expected to be in a place of danger cannot be seen, and then be upheld when it asserts its employees could not have seen such person had they looked ever so carefully? Is is reasonable care, in the performance of the duty to keep a lookout to discover a dangerous situation, to put yourself in a position from which it is physically impossible for such lookout, however faithfully maintained, to enable you to see the place of probable danger at all until the injury is inflicted?

The duty to keep a lookout in a case like this implies a duty to have some one in a position from which a lookout can be kept. In so far as the opinion is open to a construction opposed to this view, I am unable to agree. In the rest and the result I concur.

*Williams, J.,* concurs.

FARIS, J. (dissenting.)—I agree that the facts in this case fail to bring it within the ordinance pleaded, but I cannot concur in the view that other facts in the case bring it within the rule announced in the case of Ahnefeld v. Railroad, 212 Mo. 280. In what I shall suggest I am conceding, for the argument's sake, the correctness of the rule of the Ahnefeld case which puts trespassers and mere licensees in the same category, *and which, in the face of the rule existing in practically all other jurisdictions* (20 R. C. L. 142), requires a lookout to be kept for all trespassers upon defendant's tracks at places whereat such persons from their custom of trespassing are liable to be. This rule to the extent noted is too well-settled to dispute.

I concede that there was shown abundant user through a long period of years, of defendant's yards and tracks to create a custom through user from which a license *to walk on the tracks* may be deduced, so as to necessitate the maintenance, under the ·rule in the Ahnefeld case, of a lookout for persons *walking on, or crossing over these yards and tracks.* But that is not the case before us; a license to walk on or cross over the yards and tracks does not embrace or include a license to enter on and in cars standing on such tracks and in such yards. If plaintiff (whose condition is so pitiable as almost to shake calm judgment) had been walking on or crossing over the tracks or yards when he was injured there would be under the rule supra, a fairly clear case of liability. But he was in no such position. *He was on top of a coal car astride of the brake-wheel,* when the defendant, pursuing its ordinary business in its usual and necessary way, shook him off while making a coupling and ran over him. So, I think before plaintiff can invoke the rule of the Ahnefeld case and recover, *implied consent to user creating a license for boys to be and play upon cars must be shown.* I do not think it can be the law that the defendant was required to keep a lookout for *trespassers in and on its cars,* or to seek out such and warn them or evict them, before it was entitled to use is property in its customary way. Surely (absent the rule in the "turntable cases," neither pleaded, invoked nor applicable here), it would be a dangerous doctrine to say that implied consent to a trespass in or on cars, or in one's house or barn, could ever grow into such a license from user. But even if I am wrong about this, surely the duty to keep a lookout for a trespasser whose presence is neither actually known nor suspected, *cannot arise. in the very teeth of a continuous and perennial effort of the owner, or the defendant here to prevent such user.*

The courts of Missouri stand almost alone in having extended the "last-clear-chance" doctrine to include not only the duty to avoid (if possible to do so with the appliances at hand) injuring one who is guilty of con-

current contributory negligence after he is seen to be in danger, *but also to require the maintenance by a defendant railroad of a lookout at certain places whereat such contributory negligence is likely to occur.* These places include public streets of cities, towns, and villages, public road crossings over railroads, private railroad yards and even stretches of track in the country whereon trespassers are and have been so long accustomed to walk as to create upon defendant's part an implied invitation to such trespassers to use its private property as a public path. But the question here goes far beyond this present conceded status of the *Missouri,* or humanitarian, rule.

The requirement to keep a lookout for trespassers on a stretch of track in the country, or in a private switchyard, inevitably arises from implied consent, or invitation, to trespassers to use such switchyards or tracks as ways of passage. This implied consent is to be deduced from long acquiescence in such use by the public. If there has been no such acquiescence *it is difficult to see how the duty could ever arise to keep a lookout for trespassers.* It is true that the Ahnefeld case puts the basis of such a duty upon the humane principle that the defendant on account of long continued use of its tracks as passage-ways by trespassers had reason to expect trespassers to be there and so was required to maintain a lookout for them. This may be called the Missouri extension of the last-clear-chance doctrine, but granting its correctness there are I think in the instant case two glaring points of differentiation from the Ahnefeld case. In the Ahnefeld case it was applied to the duty of keeping a lookout for *persons walking upon the tracks* of a railroad, whereon persons had walked *without objection, let or hindrance* from such railroad for twenty-five years. In this case, it is sought to apply it to rolling-stock in a case *where boys were accustomed to play upon gravel-cars* in defendant's private yards; *not with the consent of defendant, express or implied, but against the continuous efforts of defendant,* the police officers and the father of this boy

to prevent such use. We of course leave out the efforts of the public officers and of the father of the boy to prevent such use, since such facts go only to conceded contributory negligence. But the new and serious question here is: Can a custom of user, which must be bottomed on implied consent, or invitation, grow up which will require the keeping of a lookout, *when defendant is continuously using every effort to prevent such unauthorized use?* We have called attention to the Missouri extension of the humanitarian doctrine as set out in the Ahnefeld case. But there is a vast difference between the very convenient and natural use of a railroad track by pedestrians, and the going in and on standing cars and using them as play-houses. Likewise there is a difference between requiring the duty to keep a lookout from one who by long acquiescence has seemed to consent to a trespass and from one who has continuously and publicly denied and negatived that consent. I think in respect of the two behalves mentioned, the majority opinion goes beyond the Ahnefeld case, which itself goes far beyond the rule in practically all other jurisdictions. [20 R. C. L. 142; 29 Cyc. 530; 33 Cyc. 855.]

So, I am of the view that before plaintiff can invoke the rule of the Ahnefeld case he must show that the duty to keep a lookout for him arose from implied consent, from acquiescence of defendant, for him to be and play upon its standing cars. There is no such consent to be implied from the facts here, but the contrary appears. For the plaintiff in his own testimony, in answer to questions from his counsel, said: "Q. I say did any of the trainmen ever order you away from cars that were standing, standing cars. A. Yes, sir." His counsel, evidently deeming that he had not heard aright, again asked plaintiff: "Q. I say did they order you away from the standing cars, the cars that were standing? A. Yes, sir. Q. Who ordered you away? A. The man working at the digger." ' Testifying as to the efforts of the local police to keep him out of the yards, the plaintiff said: "Q. Do you know Mr. Anderson,

who is a policeman over there? A. Yes, sir. Q. He used to come down where you boys were, didn't he, and tell you to get away? A. Yes, sir. Q. He told you the night before you got hurt; do you remember a crowd of you boys being there? A. Yes, sir. Q. And he told you you ought to go away, that you might get hurt, didn't he? A. Yes, sir. He has told us all. Q. Told you all that? A. Yes, sir. Q. Did you go away that time? A. Yes, sir. Q. Came back the next day? A. Yes sir. Q. Now, do you know some other policeman and officers up there who told you boys to keep away? A. Yes, sir. Q. And do you know the engine crew that run those engines? A. No, sir. Q. Don't you know any of those men? A. No, sir. Q. Did you ever see any of the boys throw rocks at them when they would tell the boys to get away? A. Yes, sir. Q. Who did you see throw rocks? A. I seen Moxley throw rocks at the boys. Q. Did you ever throw rocks at any of them? A. No, sir. Q. Well, now, whenever the trainmen or officers and men around the sand-digger over there, when they would see you boys around there, they would tell you to go away, wouldn't they? A. Yes, sir."

In cross-examination plaintiff was asked: "Q. Well, now, whenever the trainmen, or officers and men around the sand-digger over there did see you boys around there, they would tell you to go away, did they not? A. Yes, sir."

One of the plaintiff's witnesses, a Mr. Helton, who had been a member of the Hannibal police force, said that he had been instructed to keep boys off of these cars. Thereupon he was asked whether he had been able to keep them off. He answered: "We did all we could to keep them off. Yes, sir, we did our best. Q. Run them off the cars? A. Yes, sir." Another witness for plaintiff, upon this point, said: "Q. What do boys do? A. They jump on and off the engine and on the cars. It is a hard matter to keep them off down there. I didn't notice anybody that day. Q. I mean before that time? A. Oh, yes, I have. Q. Have you ever had any experience with trying to keep the boys off? A. Oh I

Dalton v. M. K. & T. Ry. Co.

have, yes. They would jump off one end and would jump on the other. Q. You mean you would put the same boy off one end and he would run and jump on to the other? A. Yes, sir, I have. Q. Was that frequent? A. O, not very frequent, but I have done it several times. Q. Would you say it was an easy matter, or a hard matter, to keep the boys off? A.. When they take a notion to get on it is a hard matter to keep them off.''

It would seem to be a contradiction in terms to say that plaintiff in the face of the facts shown by the record, which in part I set out, can bring himself within the pale of a licensee upon the ground of implied consent or invitation. ''Implied invitation,'' says the Supreme Court of New Jersey, ''is part of the law of negligence by which an obligation to use reasonable care arises from the conduct of the parties; its essence is that the defendant knew, or ought to have known, that something that he was doing or permitting to be done might give rise in an ordinarily discerning mind to a natural belief that he intended that to be done which his conduct had led the plaintiff to believe that he intended. It is not enough that the user believed that the use was intended; he must bring his belief home to the owner by pointing to some act or conduct of his that afforded a reasonable basis for such a belief.'' [Furey v. Railroad, 67 N. J. L. l. c. 275.]

I am convinced that upon the facts of the case defendant owed no duty to avoid injuring plaintiff *where he sat* till it actually saw him. There is no proof that he was ever seen or that he was known to be in a place of danger before the accident. His lamentable condition appeals to me strongly, and I regret that I can not bring myself to see any cause of action in him. Therefore, I dissent to the views and judgment reached by the majority, and for the reasons given vote to reverse the case outright.