[Civil No. 4673. Filed April 30, 1945.]

[158 Pac. (2d) 519.]

W. D. TENNEY, Appellant, v. RALPH ENKEBALL, a Minor by Hannah Enkeball, Guardian *Ad Litem,* Appellee.

Messrs. Fennemore, Craig, Allen & Bledsoe; Messrs. Patterson & McFate, for Appellant.

Messrs. Morgan & Locklear, for Appellee.

FAULKNER, Superior Judge.—This action was brought by the appellee, Ralph Enkeball, a minor of the age of twelve years, by his guardian *ad litem*, against the appellant, W. D. Tenney, and his brother, Boyd Tenney, to recover damages for injuries received on July 22, 1942, when a truck owned by appellant and used in the operation of a garbage route, ran over appellee. Such injuries consisted of a compound fracture of the femur, and severe lacerations and multiple contusions. Some twenty stitches were required to sew up the lacerations. The fracture slipped after the leg had been placed in a cast. When it was reset, it became necessary to make a long slit in the flesh and insert a metal splint and fasten the same with screws, in order to hold the bone in place. It also was necessary to give appellee a blood transfusion. Appellee suffered great pain and required treatments extending over a period of many months, and incurred surgical, hospital and other expenses in connection with the injury, amounting to $1260. At the trial,

which occurred nearly a year after the accident, his surgeon testified that the injuries would not be permanent, but there still was atrophy of the muscles of the injured leg, and it was smaller than the other leg.

The case was tried before a jury which found in favor of Boyd Tenney, but rendered a verdict in favor of appellee and against appellant for $2850. This appeal is from the verdict and judgment, and from an order overruling appellant's motion for a new trial.

Appellant secured a certificate of convenience and necessity from the Arizona Corporation Commission authorizing him to operate a garbage route in Miller Valley, adjacent to the city of Prescott, and operated the same in person for some time prior to 1942, when he moved to Flagstaff, and left the business in charge of Boyd Tenney, with authority for the latter to employ the help necessary. Boyd Tenney had no interest either in the truck or in the garbage route, but merely acted as agent for appellant. About April 1942, Boyd hired Austin Hogue, an eighteen year old boy, to run the truck and operate the route. Later he hired appellee at a wage of $4 per week to work in his feed store, and permitted him at times to assist Hogue in collecting the garbage, charging part of his wages to appellant. The accident occurred on the fourth trip appellee made with Hogue. They were accompanied by Luther Hamilton, a boy about the age of appellee. The two boys carried the smaller containers to the truck, while Hogue handled the larger ones. The boys rode on the running boards or fenders between stops.

Hogue testified in substance that the last stop on the day of the accident was on Lincoln Avenue; that he drove from thence to and along Whipple Street and turned north on Ruth Street, and turned corners as he entered each of the streets; that he was driving about ten miles an hour when he turned into Ruth Street, but got back to about fifteen or twenty miles

after he straightened up on Ruth Street at the time of the accident; that at the last stop on Lincoln Avenue both boys got on the running board of the truck, Enkeball on the right-hand side, and Hamilton on the left; that he "told them they should not be riding on the running boards as it was dangerous"; that he thought Enkeball was on the running board when he made that statement; that after he started the truck and came close to Whipple, he noticed that Enkeball was on the fender; that "he had moved over from the position of riding on the running board to the position of riding on the fender between this last stop and Whipple Street"; that he was on the fender when the turn was made into Whipple Street, and when the truck turned the corner into Ruth Street.

The following excerpts from the testimony are presented here, as a basis for the discussion of the assignments of error hereinafter mentioned.

Hogue testified as follows, in answer to questions by Mr. Head, attorney for Boyd Tenney:

"Q. Did you notice after you started down Ruth Street and after you straightened out toward the houses there north as to whether he was still on the fender? A. Yes, sir.

"Q. In what position was he as you recall from his observation? A. I did not notice him very close. It looked like he was leaning over.

"Q. That was after you got on Ruth Street? A. Yes.

"Q. As far as you noticed he was leaning over? A. As far as I could see. It might have been he caught his foot or whatever he had there and fell off, I couldn't see.

"Q. How would you think he would catch his foot? A. The tires of the wheels are not very far from the fender and he had his legs hanging down there.

"Q. He had his legs down where the wheels were? A. Well, down in front of the truck.

"Q. From your observation he was sitting with his feet hanging down over the wheel? A. Yes, sir.

"Q. You stated that you had told Ralph Enkeball and Luther Hamilton both to stay off the fenders of the truck over there on Lincoln Avenue, so you had every occasion to tell Ralph Enkeball before that time to watch his safety and stay away from dangerous parts of the car? A. Yes, sir.

"Q. Do you recall how many times you told him? A. Usually every time I started out I told him.

"Q. What did he do with reference to your orders in that regard? A. Well, he would not listen to me it seemed."

All the testimony offered on behalf of Boyd Tenney was adopted by appellant as his testimony in the case.

The evidence showed that appellee had done very little riding in automobiles. His family had owned a car at one time for about two weeks. He testified in part as follows:

" . . . I kept riding on that fender off and on for a while, and then when we got to our last stop on Lincoln Avenue, why, I got on the fender and then I rode on the rest of the way down Lincoln and then up Whipple Street, and then he rounded the corner at Ruth and Whipple. . . . Yes, sir, he went right close to the edge and he just missed the fence and I got quite a bit dizzy there . . . and then he swerved back to get on the right-hand side of the road and I was pitched in front of the car, in front of the truck."

In describing the truck, appellee said:

"Well, it had a stake body in the back and was awfully wobbly and was not very good in the back, and the door was loose and would fly open sometimes, and the fender, the left fender it was, . . . yes, it was the left fender that had the crack in it up there. It had been welded, but the welding had broke. It was loose and wobbly and there was no bumper on the front. . . . Yes, sir, the windshield was broken."

Appellee further testified that he rode on the fenders the three previous trips; and that he did not want to ride on the running board because the door was broken

and would fly open sometimes; and that it was handy to slide off the fender to run and get the garbage; and that he did not remember that Hogue had ever told him to keep off the fenders.

Appellant testified that the truck was a 1935 Chevrolet, and was in A-1 condition when he saw it last. He had not heard that the windshield was broken, and did not know that the fenders were loose. They were in good condition when he saw them. He admitted that he owned the truck and garbage route at the time of the accident.

The following testimony of appellee is quoted in appellant's brief:

"Q. When you were on the fender of the car out there you knew it was not safe to be there and you knew it was safer to be in the cab, didn't you? A. Yes, in a way.

"Q. You knew if you fell *off* of that fender *it would be* dangerous? A. Yes.

"Q. In fact, when you were sitting on the fender you could see the wheel turning under the fender, couldn't you? A. Yes, sir.

"Q. So when you got up on that fender you actually knew you were in danger of your life and you might be killed in getting up on that fender? A. No, sir, I didn't.

"Q. You did not think you would be killed? A. Well, not actually. If he had drove slowly I probably would not have.

"Q. You knew there was danger in any speed of riding on a fender if you fell off? A. Oh, yes.

"Q. When you got out there you knew that? A. Well, in a way, but in a way I did not."

Appellant adds this comment:

"The plaintiff admits by the above quoted testimony that he realized the danger of riding upon the fender of the truck and had a full appreciation of the hazard involved. . . . ."

Appellant made ten assignments of error. His first assignment is directed at an instruction which submits a hypothetical proposition based upon appellee's theory of the case, and directs that if the jury finds certain facts, "such failure constitutes negligence, and would be the proximate cause of the injury." Appellant complains that the instruction was defective, in that it failed to mention his defense of contributory negligence, and "That it attempted to outline the duties and responsibilities of the driver of the truck without relation to any corresponding duties and responsibilities on the part of the plaintiff-appellee."

We think the evidence justified the giving of this instruction. The court elsewhere in its instructions fully instructed the jury as to the defense of contributory negligence. Under a rule so well known that no citation of authorities is needed, the instructions must be read and considered as a whole and, if the subject is fully covered anywhere in the instructions, they need not be repeated in instructions dealing with other phases of the case. This instruction appears to be practically the same as the instruction considered by this court in the case of *Pearson & Dickerson Contractors* v. *Harrington,* 60 Ariz. 354, 364, 137 Pac. (2d) 381, 385, wherein a hypothetical proposition was presented, and the court said:

"The instruction left it to the jury to determine whether the facts upon which it was based had been established by the evidence. If the facts were established, one conclusion of law followed, to wit, defendant was guilty of negligence. The defendant made no request of the court 'to state the law as applicable to the converse of the facts supposed,' as was its right and privilege. The instruction was not subject to the objections named."

In this case, appellant made no request for an instruction based upon his view of the evidence, and

stating the converse of the hypothetical instruction given upon the request of appellee, and therefore cannot complain because the court failed to do so.

An instruction of like character is complained of in appellant's third assignment, and is disposed of by what is said concerning his first assignment.

■ Appellant's second assignment alleged error in the giving of appellee's seventh requested instruction, the pertinent part of which reads as follows:

"I charge you that if you find from the preponderance of the evidence in this case that the plaintiff, Ralph Enkeball, sustained injuries and damages as alleged in his complaint, and that such injuries were caused through the carelessness and negligence of the driver of the truck, Austin Hogue, in permitting the plaintiff to ride on the fender and in the operation of said truck, and that the plaintiff was free from negligence as defined in these instructions, then I instruct you that the plaintiff is entitled to recover damages against the defendants for such injuries as the evidence may show him to be entitled."

Appellant's driver, Hogue, had complete control of the truck, and drove it several blocks with full knowledge that appellee was in a dangerous position on the running board, and saw appellee's feet hanging near the wheel. Appellant takes exception to the suggestion in this instruction that appellee was "permitted" to ride on the fender.

Ballentine's Law Dictionary, page 956, defines permit as follows: "To allow to be done by consent or by not prohibiting."

Black's Law Dictionary, De Luxe Edition, page 1353, gives the following definition: "To acquiesce, by failure to prevent, or to expressly assent or agree to the doing of an act."

In a similar case involving a boy of the age of fourteen years, the North Dakota court said:

"It is plain that, if defendants, at the inception of the journey, had stopped their car and compelled the boy to have gotten off the car and remained off, which they had a perfect right to do, . . . no injury to him would have occurred." *Grabau* v. *Pudwill,* 45 N. D. 423, 178 N. W. 124, 126.

We think that in view of all the circumstances as shown by the evidence this instruction was not erroneous. We cannot agree with appellant's conclusion that appellee fully realized his danger.

■■ The fourth assignment is directed against an instruction on last clear chance, which appellant contends was not justified by the evidence in the first place, and was defective in that it did not cover all the essential elements of last clear chance. The evidence showed that appellant's driver, who had complete control of the truck, drove several blocks with appellee on the running board in a position which the driver knew to be dangerous. He had told appellee that it was dangerous. He saw appellee's legs hanging down near the wheel just prior to the accident while he was driving at fifteen or twenty miles an hour, and made no attempt to stop the truck. We think the evidence justified an instruction on last clear chance. If appellant considered it incomplete, he should have requested an instruction that did fully cover the situation. Apparently no such instruction was requested.

■ Assignments V and VII raise objections to instructions given at the request of appellee, upon the ground that they involve the principle of *res ipsa loquitur*. Appellant contends the principle is not involved in this case, and that the giving of an instruction upon that subject is prejudicial to him. The truck, the instrumentality which caused the accident, was entirely under the control of appellant's driver, Hogue, who had full knowledge of the precarious position of appellee at the time of the accident. In the case of

*Sawyer* v. *People's Freight Lines,* 42 Ariz. 145, 149, 22 Pac. (2d) 1080, 1081, this court said:

"In some cases the maxim *res ipsa loquitur,* which is a rule of evidence only, steps in and supplies sufficient proof of negligence to require the defendant to show that it was not through his fault that plaintiff was injured. Such cases arise: 'Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care. This statement of the rule of *res ipsa loquitur,* based on the expression in an early English case, which has been widely quoted with approval, has been in substance most frequently adopted and applied in subsequent decisions so that the occurrences of an injury under the circumstances therein set forth raises a presumption or permits an inference that the party charged was guilty of negligence.' 45 C. J. 1193, § 768. If the elemental facts enumerated in this rule are present, a plaintiff has established a *prima facie* case. The presumption or inference of negligence arises from the inherent nature and character of the act causing the injury. . . . "

In *Stewart* v. *Crystal Coca-Cola Bottling Co.,* 50 Ariz. 60, 68 Pac. (2d) 952, 954, this rule is reiterated, and the court stated further:

" . . . The fact that the plaintiff may, in a proper case, rely on this rule does not mean, however, that he is excused from proving negligence, for there is no exception to the rule that one seeking damages for an injury caused thereby must establish that negligence by a preponderance of the evidence. . . . "

The jury in this case was instructed that the burden was on appellee to prove the negligence of appellant by a preponderance of the evidence. Under the evidence in this case, we think the rule of *res ipsa loquitur,* the thing speaks for itself, did apply,

and that an instruction on the subject was proper. The instruction given by the court was taken bodily from California Civil Jury Instructions, No. 206 b, p. 321, and correctly states the law applicable to the facts in this case. Further, the giving of this instruction under the issues in this case was in accordance with the rule which we adopted in *Pickwick Stages Corp.* v. *Messinger,* 44 Ariz. 174, 36 Pac. (2d) 168. We held in that case where specific negligence was alleged that the doctrine of *res ipsa loquitur* was applicable as an aid to the proof of those specific facts.

 Appellant's sixth assignment is directed at an instruction as to the standard of care to be used to measure the conduct of a boy twelve years old. We find that this instruction is taken verbatim from Reid's Branson Instructions to Juries, 3rd Ed., Vol. 3, Sec. 1280, p. 587. The court in another instruction directed the jury to take into consideration the age and mental maturity of the appellee, and his ability to comprehend the danger in which he found himself. We think that when these two instructions are considered together, they are within the rule laid down by this court in the cases of *Buckeye Irrigation Co.* v. *Askren,* 45 Ariz. 566, 46 Pac. (2d) 1068, and *Southwest Cotton Co.* v. *Clements,* 25 Ariz. 169, 215 Pac. 156, for negligence cases involving children.

 Appellant's requested instruction No. D-9 presented in his eighth assignment of error, was properly rejected, if the doctrine of *res ipsa loquitur* applies to the case, and we hold that it does apply. The proposed instruction reads in part as follows: "You are instructed that negligence is never to be presumed . . . ." In cases where the doctrine of *res ipsa loquitur,* as defined by our court, applies there is a *presumption* or *inference of negligence* which the defendant must overcome. The rejection of the proposed instruction was not erroneous.

 The ninth assignment alleged as error the failure of the court to give appellant's requested instruction number D-12, which reads as follows:

"I instruct you that if in your deliberations and from a consideration of all of the evidence you find yourselves unable to arrive at a verdict, except by guessing, speculation, or conjecture as to whether defendants were negligent in the respects charged in the com-complaint, and whether such alleged negligence, if any there was, proximately caused or concurred in causing, plaintiff's alleged injuries, then in such event your verdict should be for defendants because the law does not permit a verdict to be returned against a defendant when the foundation of such verdict is guesswork, conjecture or speculation."

This proposed instruction is purely cautionary, and we see nothing in the record that furnishes any substantial basis for it. In the course of its instructions to the jury, the court said:

"Your verdict must be based solely upon the evidence received and the law as given to you in these instructions."

 The rule on cautionary instructions is stated in 5 C. J. S., Appeal and Error, § 1775, at page 1164, as follows:

"The giving of cautionary instructions stands on a different footing from the giving of instructions on the law of the case and is a matter very much within the discretion of the court. It is generally held that their refusal cannot ordinarily be assigned for error."

The refusal of the court to give this cautionary instruction was not error.

The last assignment was that the court erred in refusing to grant appellant a new trial. The grounds presented to the lower court in support of such motion were essentially the same as the grounds stated in the first nine assignments in this case. The motion was properly denied.

██ The acts of the driver of the car are imputable to his principal, the appellant herein, when acting within the scope of his employment. When the entire circumstances are taken into consideration, it is doubtful if the jurors ever arrived at the point where it was necessary for them to consider the questions of contributory negligence or last clear chance. They might well have arrived at the conclusion that the driver was guilty of primary negligence continuing from the last stop on Lincoln Avenue all the way down Whipple and Ruth Streets to the time and place of the accident.

A careful review of the entire record in this case convinces us that substantial justice was done between the parties, and that the record shows no reversible error. Therefore, the judgment of the lower court is affirmed.

STANFORD, C. J., concurs.

MORGAN, J., being disqualified, the Honorable J. W. Faulkner, Judge of the Superior Court of Mohave County, was called to sit in his stead.

LaPRADE, J., (Dissenting.)—I cannot agree with the majority decision in this case for the reasons hereafter set forth. Among other instructions, the court gave the following:

"You are instructed that the driver of an automobile, who knows that a person is riding on the fender of his automobile or truck, is under the duty not to expose such person to danger or injury. The driver is under the duty of exercising reasonable care and caution toward such person and this is particularly true if it is a child. So, in this case, if you find from the evidence that the driver of the truck knew that the plaintiff, a boy of twelve years of age, was riding upon the fender of the car and the driver failed to use ordinary care and caution to protect the boy, and, as a result the plaintiff was injured, that such failure con-

stitutes negligence and would be the proximate cause of the injury.''

"From the happening of the accident involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the driver as alleged in the Complaint. The inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendants to rebut the inference by showing that the driver did in fact exercise ordinary care and diligence, or that the accident occurred without being proximately caused by any failure of duty on his part.''

I believe that these instructions placed an unconscionable burden on the defendant. The first instruction above set out forecloses the jury's province of determining whether or not the failure of the driver of the truck to use ordinary care and caution was the proximate cause of the injury by precluding any consideration by the jury of concurrent negligence on the part of the plaintiff. *Fuller* v. *Darnell*, 100 Fla. 773, 129 So. 915, 74 A. L. R. 1. It was also erroneous in laying undue stress on any negligence that may have been shown as to the driver of the truck to the exclusion of all other evidence including plaintiff's concurring negligence, if any, proper to be considered by the jury in determining the issue of negligence and proximate cause. With reference to this instruction, the plaintiff-appellee used the following language in his brief:

" . . . Where a minor is permitted to ride on the outside of a car and the driver negligently operates the car in such a manner as to cause injury, such facts constitute negligence and such negligence is the proximate cause of the injury. In the instructions complained of, the Court simply told the jury that if they

found these facts to be true that, as a matter of law, the lack of due care would constitute negligence and would be the proximate cause of the injury.''

The interpretation placed on this instruction by counsel for the plaintiff-appellee I believe to be correct. But I have never considered it to be the law that a trial court was permitted to instruct the jury as to what was the proximate cause of an accident. That was the issue to be determined by the jury. The instruction given by the court contradicts and nullifies any instruction that was given on behalf of the defense as to contributory negligence. In other words, the court told the jury, in effect, that, if it believed the driver of the truck did not use ordinary care and caution to protect the plaintiff, and as a result the plaintiff was injured, such failure constituted negligence and *was the proximate cause of the injury*. This instruction told the jury that any negligence on the part of the defendant contributing to the injury was the proximate cause of the injury, and entirely disregarded the jury's consideration of all the other evidence in the case and any negligence whatsoever at the time of the accident on behalf of the plaintiff which may have also been a concurring proximate cause of the injury. This particular instruction unduly emphasized a particular piece of the evidence. The holding in the case of *Wiser* v. *Copeland*, 23 Ariz. 325, 331, 203 Pac. 565, 567, I believe to be applicable to the facts here. There the trial court was requested to instruct the jury upon a single phase of the evidence as to the defendant's responsibilities as follows:

'' 'You are instructed that the defendant had the legal right to drive his vehicle upon any part to the right of said McDowell road, whether the same was that part described in evidence as paved or unpaved, and you cannot find him guilty of negligence merely because you may find that he drove his machine in part upon the unpaved portion of said road'—and

asserts that in the trial of the case below counsel for appellee 'ever pointed his finger to the fact that at the time of the accident appellant was driving with his two right wheels off the pavement. It was to correct any erroneous impression which the jury might gather from the stress of that point that counsel asked for the declaration by the court of the substantive law relating to the respective rights and duties of users of the highway, to be met with refusal.' ''

With reference to the refusal of the trial court to give the requested instruction, this court said:

''We think the instruction requested had a tendency to mislead the jury by treating appellant's rights without relation to the rights of appellee, and by laying undue stress on one fact in the case to the exclusion of all others proper to be considered in determining the vital issue of negligence. Appellant's legal right to drive his car on any part of McDowell road was not to be exercised without respect to the rights of others who might be lawfully using that highway. It was his duty, while driving his car, to exercise ordinary care to avoid injury to persons lawfully in the street, and the duty of such persons to exercise the same degree of care for their own safety. The law implies reciprocal obligations. Huddy on Automobiles (5th Ed.) § 414, and cases cited; 2 R. C. L., p. 1186.

''The gravamen of this action is that the appellant was guilty of negligence in his use of the road, to the injury of appellee. The jury might well have concluded that if the appellant had not been negligent in the driving of his car (in fact, partly upon the unpaved portion of the road) that the injuries would not have been inflicted. The instruction in such event, that negligence could not be predicated of the act of appellant merely because it took place in part upon the unpaved portion of the road, would inevitably tend to mislead and confuse the jury as to the precise legal bearing of the act of appellant thus singled out on the issue of negligence—an issue properly to be determined only upon consideration of all the circumstances of the case.''

In appellee's brief our attention is called to a number of cases holding that where a child is permitted to ride on the outside of the truck the operator must handle his truck with due care so as not to cause injury to the child. One of these is *Rook* v. *Schultz,* 100 Or. 482, 198 Pac. 234, 235. It is interesting to note that in this case the court gave the following instruction, which I consider to be correct and which would have been applicable in the instant case:

"If you find the evidence in this case that the defendants were careless and negligent, in that they permitted plaintiff to ride on the running board of their motor truck, or they operated their motor truck at a high and dangerous rate of speed, and that as a direct and proximate result of such negligence, without negligence on the part of plaintiff, plaintiff was injured, in that event your verdict should be for the plaintiff, if the accident was not a pure accident and plaintiff was not guilty of contributory negligence. Of course that takes into consideration the fact that they knew he was riding on the truck."

The majority opinion disposes of the assignment of error predicated upon the instruction complained of by reciting that the trial court in other instructions fully instructed the jury on the law of contributory negligence. I contend that the law could have been expounded to the jury in one correct instruction as was done in the Rook v. Schultz case, *supra,* and the jury would have had all of the law expounded to it in the one instruction. When great numbers of instructions are given, who can say which one the jury heard or, having heard them all, which instruction was fully understood and retained in memory. It is assuming too much to presume that laymen can dissect contradictory instructions and harmonize them.

I am convinced that the trial court committed error in submitting the instruction on *res ipsa loquitur.* The doctrine of *res ipsa loquitur* was in no manner ap-

plicable to the facts in this case as will be more specifically pointed out hereafter. Not only was an instruction on the doctrine of *res ipsa loquitur* as given not authorized, but the language of the instruction was a flagrant comment on the evidence. The instruction may be paraphrased as follows:

"From the happening of the accident involved in this case, as I believe it to have been established by the evidence, there arises an inference in the court's mind and in the law that the proximate cause of the occurrence was some negligent act on the part of the driver as alleged in the plaintiff's complaint."

It is prejudicial error for a court to instruct the jury on the doctrine of *res ipsa loquitur* when the facts in the case do not warrant such an instruction. *Stewart v. Crystal Coca-Cola Bottling Co.*, 50 Ariz. 60, 68 Pac. (2d) 952. Such an instruction compelled the defense to carry a burden not justified by the law applicable to the facts in this case, and directed the jury to make inferences against the defendant not permissible under the law in a negligence case of this nature.

*Res ipsa loquitur* means that the thing speaks for itself, just the telling of the accident warrants a presumption that the person who had the thing complained of under his control must have been guilty of negligence, and is a term used in a limited class of negligence cases, referring to the method of proof of general negligence as distinct from proof of specific negligence. The complaint charged *specific negligence*. The plaintiff was not in the dark as to the circumstances which caused the offending instrumentality to operate to his injury. Here is his allegation of negligence.

"In the operation of said truck on said garbage route in Miller Valley, on the afternoon of July 22, 1942, and while the plaintiff was so riding on the right front fender, the defendants, through their driver, drove and operated said truck at a high rate of speed

and in such a negligent and unskillful manner as to cause said boy to be hurled from the fender to the roadway, under the truck, causing the two right wheels to pass over his body, from which he suffered the following injuries: Contusion of the brain, a compound comminuted fracture of the right femur close to the hip, a tear in the scrotum requiring several stitches, various contusions, lacerations and abrasions.''

It is certainly unfair to place a defendant in the position whereby the invoking of such a doctrine takes the place of evidence, and permits the jury to infer that because an accident happened the defendant was guilty of negligence which was the proximate cause of the injury complained of, when all the facts in the case were available to plaintiff and testified to by him in minute detail.

The doctrine of *res ipsa loquitur* is predicated upon plaintiff's inability to specfy the act of negligence which caused his injury and therefore permits him to rely upon the doctrine of *res ipsa loquitur* as a substitute for specific proof. 45 C. J., § 770, p. 1200.

The doctrine of *res ipsa loquitur* does not apply where there is *no want of evidence* as to the cause of the accident and the manner in which it occurred. *Carlsen* v. *Diehl,* 57 Cal. App. 731, 208 Pac. 150; *Dorne* v. *Adams,* 243 Mass. 438, 137 N. E. 650; *O'Donohue* v. *Duparquet, etc., Co.,* 67 Misc. 435, 123 N. Y. S. 193; *Riggsby* v. *Tritton,* 143 Va. 903, 129 S. E. 493, 45 A. L. R. 280 (p. 1206 C. J. 42). Was there want of any testimony in this case as to the cause of the accident and the manner in which it occurred? The plaintiff testified as follows:

'' . . . then he (the driver of truck) rounded the corner at Ruth and Whipple . . . Yes, sir; he went right close to the edge and he just missed the fence and I got quite a bit dizzy there . . . and then he swerved back to get on the right-hand side of the road and I was pitched in front of the car, in front of the truck.''

The doctrine of *res ipsa loquitur* is predicated upon the superior knowledge of the defendant as to the cause of the injury under the particular circumstances involved. A full and explicit statement of this portion of the rule appears in the text of Corpus Juris as follows:

"Sec. 773 (b) *Superior Knowledge of Defendant as to Cause of Accident.* The reason or theory of the doctrine of *res ipsa loquitur* is based in part upon the consideration that, as the management and control of the agency which produced the injury is, under the circumstances to which the doctrine applies, exclusively vested in defendant, plaintiff is not in a position to show the particular circumstances which caused the offending instrumentality to operate to his injury, while defendant, being more favorably situated, possesses the superior knowledge or means of information as to the cause of the accident, and should, therefore, be required to produce the evidence in explanation. Accordingly if the circumstances do not suggest or indicate superior knowledge or opportunity for explanation on the part of the party charged or if plaintiff himself has equal or superior means of information, the doctrine cannot be invoked." 45 C. J., § 773, p. 1205.

It will be noted from the principles enunciated in the foregoing section that, if the circumstances do not suggest or indicate superior knowledge or opportunity for explanation on the part of the party charged, or if the plaintiff himself has equal or superior means of information, the doctrine cannot be invoked.

Plaintiff in this case was the one who had the superior knowledge of what caused him to fall off the truck. There was nothing peculiar about the accident whereby the driver of the truck had any particular information as to how the accident happened that was not within the knowledge of plaintiff. His direct and positive testimony dispenses with the necessity for invoking the *res ipsa loquitur* doctrine. The treatment of this subject in Corpus Juris is as follows:

"Sec. 774 (c) *Absence or Unavailability of Direct Evidence of Negligence.* The doctrine of *res ipsa loquitur,* although it provides a substitute for direct proof of negligence where plaintiff is unable to point out the specific act of negligence which .caused his injury, is a rule of necessity to be invoked only when, under the circumstances involved, direct evidence is absent and not readily available. Accordingly it has been held that the rule not only does not relieve plain- ·tiff from adducing any evidence within his power, but that, unless plaintiff has presented all the testimony reasonably within his power, he can derive no benefit from the doctrine. On the other hand, since the effect of the doctrine is that of a presumption or inference only, its application is conditioned, and rests essentially on the absence of direct evidence of defendant's negli- gence. Hence the presumption or inference arising from the doctrine cannot be availed of, or is overcome where plaintiff has full knowledge and testifies as to the specific act of negligence which is the cause. of the injury complained of, or where there is direct evi- dence as to the precise cause of the accident and all the facts and circumstances attendant upon the occur- rence clearly appear. . . . " 45 C. J., § 774, p. 1206.

This court in the case of *Sawyer* v. *People's Freight Lines, Inc.,* 42 Ariz. 145, 22 Pac. (2d) 1080, considered the doctrine of *res ipsa loquitur.* It quoted with ap- proval the statement of the rule as it appears in Sec- tion 768, 45 C. J., p. 1193, and then this language ap- pears: "If the *elemental* facts enumerated in this rule are present, a plaintiff has established a *prima facie* case." (Italics mine.) · This court in *Pickwick Stages Corp.* v. *Messinger,* 44 Ariz. 174, 36 P. (2d) 168, had occasion to consider the applicability of the doctrine of *res ipsa loquitur.* In this case it set forth some of the situations in which the rule is applicable, as train derailments, train accidents, rear-end collisions be- tween stages engaged in carrying passengers, collisions between a passenger bus and another vehicle, etc. There has been no end of cases in which the rule has been applied. It has been applied to falling objects,

objects flying out of train windows, fall of boom of hoisting apparatus, fall of machinery while being hoisted, fall of awnings, barrels, boards, planks, beams or other timber, fall of a box of goods being hoisted into a building, chimneys and stones falling from buildings, collapse of walls and ceilings in buildings, cornices falling, skylights falling, elevator accidents, collapse of stairs, fire escapes falling off buildings, and the bursting of bottles containing beverages. See 45 C. J., § 771, note, 21, p. 1201.

This court in the case of *Stewart* v. *Crystal Coca-Cola Bottling Co.*, 50 Ariz. 60, 68 Pac. (2d) 952, 954, again considered the question of the application of the doctrine of *res ipsa loquitur*. With reference to the rule, this court said:

"The fact that the plaintiff may, in a *proper case*, rely on this rule does not mean, however, that he is excused from proving negligence, for there is no exception to the rule that one seeking damages for an injury caused thereby must establish that negligence by a preponderance of the evidence. It is true the purpose of the rule of *res ipsa loquitur* is to aid the plaintiff in a *proper case* in making this showing by supplying sufficient proof of negligence to require a defendant claiming that the accident did not occur through any fault of his to produce evidence to show this and take the case to the jury. (Quoting Sawyer v. People's Freight Lines, Inc., *supra*.) Instead of the law's demanding of the plaintiff the impossible in the matter of proof, facts about which he could not have any knowledge, it permits this rule to come to his rescue in certain cases and act as a substitute therefor. . . . " (Italics mine.)

I further disagree with the interpretation placed on the holding in the case of Pickwick Stages Corp. v. Messinger, *supra,* by the majority opinion, if the majority opinion intends that the rule of *res ipsa loquitur* is applicable as an aid in proving an ordinary negligence case whose facts do not warrant its use. The majority opinion reads as follows:

"Further, the giving of this instruction under the issues in this case was in accordance with the rule which we adopted in Pickwick Stages Corp. v. Messinger . . . . We held in that case where specific negligence was alleged that the doctrine of *res ipsa loquitur* was applicable as an aid to the proof of those specific facts."

It is my interpretation of the holding in the Pickwick Stages case that the doctrine of *res ipsa loquitur* is applicable as an aid to the proof of the specific facts alleged *where the specific facts fall within the purview of the doctrine of res ipsa loquitur.* In this behalf, I call attention to the interpretation of the opinion in the Pickwick Stages case made by the editors of West Publishing Co. The interpretation of these editors appears in the headnotes as published in Arizona Reports and in the Pacific Reporter, 36 Pac. (2d) 168, as follows:

"Allegation of specific acts of negligence restricts proof of both plaintiff and defendant to such alleged acts, but does not deprive plaintiff of benefit of the doctrine of *res ipsa loquitur,* where acts shown by the evidence would be within the rule under a complaint containing only a general allegation of negligence."

In the cases of Stewart v. Crystal Coca-Cola Bottling Co., Sawyer v. People's Freight Lines, and Pickwick Stages Corp. v. Messinger, *supra,* this court had occasion to review many cases treating of the doctrine of *res ipsa loquitur.* These three opinions of this court, together with its opinion in the case of *Verde, etc. R. Co.* v. *Stevenson,* 22 Ariz. 188, 196 Pac. 164, all indicate that this court has had a very clear conception as to when the rule is applicable, namely, in a *proper case.* I submit that the majority opinion evidences that this court for the first time is confused as to the application of the rule. The case should be remanded with instructions to grant a new trial.