# CHARLES EDWARD STEWART, An Infant, by His Next Friend, JOHN W. STEWART, Appellant, v. MISSOURI PACIFIC RAILROAD COMPANY.

In Banc, May 23, 1925.

1. **NEGLIGENCE: Humanitarian Rule: Contingent Danger: Trespasser on Ladder of Freight Car: Failure to Stop Train: No Negligence in Operation.** It is not a contingent danger to a person in peril which brings into operation the humanitarian rule, but certain danger. To charge a railroad with damages to a boy who voluntarily climbed upon the ladder of a car of a freight train and was injured when he attempted to jump from the car, it is necessary to show that the trainmen were negligent in the operation of the train or some part of it. Where the plaintiff, a trespasser, voluntarily climbed upon the ladder of a car of a freight train and rode there in safety until it reached the town in which he lived, and there jumped off and was injured, and another boy, riding on the ladder of another car of the same train, rode on to the next town and when it stopped got off in safety, there was no negligence in operating the train, and if the trainmen supposed he was in peril they were mistaken; the danger was contingent upon the plaintiff jumping off before the train stopped, and not upon the negligence of the trainmen in operating the train, and the defendant is not liable for damages because they did not put him off before or after the train started, even if they saw him on the ladder—and there is no evidence that the men in the caboose who could have seen him were employees of defendant.

2. ———: ———: **Meaning.** The humanitarian rule means that considerations of humanity should prevent one from injuring another whom accident, or his own negligence, has placed in the path of danger from the normal acts of the first. Failure of the first to exercise care to prevent injury to the other under such conditions creates liability. The danger must be imminent from what the person charged with such humane considerations is doing or is about to do. It must be the act of such person who causes the injury, or his failure to act when duty requires him to act, which creates the liability.

3. ———: ———: **Causal Connection with Injury: Trespasser on Car Ladder: Jumping Off.** There must be a causal connection between the negligence of defendant and the injury, in order to recover un-

der the humanitarian rule. Even if boys who had climbed on ladders of separate cars of a freight train were in peril after the train started, if they would not have been injured had they not attempted to jump off while the train was moving, there was no causal connection between the failure to stop the train or to put them off before or after it started and their injury caused by their voluntary jumping from the ladders while the train was rapidly moving.

Citations to Headnotes: Headnote 1: Negligence, 29 Cyc. p. 530; Railroads, 33 Cyc. pp. 855, 894. Headnote 2: Negligence, 29 Cyc. p. 530. Headnote 3: Negligence, 29' Cyc. p. 530; Railroads, 33 Cyc. p. 855.

Appeal from St. Louis City Circuit Court.—*Hon. Frank Landwehr*, Judge.

AFFIRMED.

*Harry C. Barker* and *Boaz B. Watkins* for appellant.

The court erred in sustaining the demurrer to plaintiff's evidence presented by defendant at the close of plaintiff's case. Dalton v. M. K. & T. Railroad Co., 208 S. W. 828; Rice v. Bridge & Transit Co., 216 S. W. 746; Stipetich v. Security Stone & Mfg. Co., 218 S. W. 964; Southard v. Kansas City So. Ry. Co., 191 S. W. 1101; Fink v. Railroad, 161 Mo. App. 314; Caldwell v. Ry. Co., 74 Pa. St. 421; Livin v. Traction Co., 194 Pa. 156, 201 Pa. 58; Thomas v. Southern Pa. Traction Co., 112 Atl. 918; Livingston v. Wabash Railroad Co., 170 Mo. 452; Holmes v. Mo. Pac. Ry. Co., 190 Mo. 98; Ashworth v. Southern Ry. Co., 116 Ga. 635; Gilbert v. Miss. River & B. T. Railroad Co., 226 S. W. 263.

*James F. Green, H. H. Larimore* and *M. U. Hayden* for respondent.

(1) The evidence adduced by appellant wholly failed to establish either (a) that, before the instant at which he deliberately jumped from the train, appellant was in any position of danger, or (b) that he was oblivious of such danger. The humanitarian doctrine is not applicable to such a state of facts as are established by the evidence in this record, appellant is not entitled to recover upon the theory pleaded in his petition, and the

judgment of the trial court should therefore be affirmed. Kinlen v. Railroad Co., 216 Mo. 145; Epstein v. Railroad Co., 197 Mo. 720; Hornbuckle v. McCarty, 243 S. W. 327; Degonia v. Railroad, 224 Mo. 564.    (2)    Appellant's evidence conclusively establishes that he was guilty of contributory negligence as a matter of law, for which reason he is not entitled to recover and the judgment of the trial court was therefore proper and should be affirmed.    Kirby v. United Railways Co., 242 S. W. 79; McGee v. Railroad Co., 214 Mo. 520; Marshall v. United Railways Co., 209 S. W. 931; Spillane v. Railway, 135 Mo. 414; Payne v. Railway, 136 Mo. 562; Walker v. Railroad, 193 Mo. 453.

WHITE, J:—This case was first heard in Division, and upon dissent was transferred to Court in Banc, where, on re-argument, the majority failing to agree on the divisional opinion, the case was re-assigned.

The suit was to recover for personal injuries claimed to have been caused to the plaintiff through the negligence of defendant's employees.

The plaintiff, not quite fifteen years of age, with six other boys, was acting as caddie on the Algonquin Golf Course.  The seven boys left the course about three o'clock in the afternoon of August 2, 1920.  The railroad tracks of the defendant pass near a putting green on the course, and the boys pursuing a path leading from the putting green walked up to the railroad tracks.  At that time a freight train was approaching, and as it reached the point, two torpedoes exploded on the railroad track, a signal for the train to stop.  It was not a regular stopping place for the train.    The train, a long one, slowed down and stopped with the caboose at the rear near the path by which the boys approached.  The seven boys proceeded to climb upon the cars, holding by the ladders on the sides, each boy taking to a separate car. The plaintiff testified that he climbed upon and held to a ladder on the seventh car from the caboose.  Presently the train started.    Three of the boys jumped off, Tom

Donovan, Joe Folker and Paul Murphy. The plaintiff, Charles Stewart, his brother Joe Stewart, Leo Prosser and George Prosser held on and rode the train. The boys all lived at Maplewood, three miles from where they got on. As the train started one of the boys who got off called to two men sitting in the cupola of the caboose that some "kids" were on the train. To this the men in the caboose paid no attention; they were laughing and talking. Each of the boys on the cars testified that as the train would bend in the curves they could see the men in the caboose. The train acquired greater speed as it ran and swayed from side to side. When it arrived at Maplewood, passing Sutton Avenue, the plaintiff, his brother Joe, and Leonard Prosser jumped off. Jack Prosser hung on until the train stopped at Ellendale, then he got off and ran back up the track. The plaintiff, in jumping off, was drawn by suction under the train and his leg was cut off. He was taken to the hospital where his leg was amputated below the knee. It is for that injury he sues. The acts of negligence alleged are as follows:

"That at the time plaintiff climbed upon said train in the manner and under the conditions as aforesaid and thereafter, he was in a position of danger, as in this petition alleged, and oblivious of his peril and in plain view of the agents of the defendant in charge of and operating said train and said agents saw or knew, or by the exercise of ordinary care should have seen or known, that the plaintiff was in a position of danger, as in this petition alleged, oblivious of his peril before and at the time and after they started said train and while plaintiff was on said train, in time, by the exercise of ordinary care, to have put plaintiff off of said train before starting it, or after starting it, to have stopped said moving train with the appliances and means at hand, with safety to those on said train and put plaintiff off and thus avoided running over and injuring the plaintiff as herein pleaded."

Thus the case was based upon the humanitarian doctrine. After the evidence was in the court sustained

a demurrer to it.   The appellant took an involuntary
nonsuit with leave, and after an unavailing motion to set
aside the nonsuit appealed from the judgment.

    I.   The theory of the plaintiff is that employees of
the company saw the boys hanging upon the cars, and
saw their position was one of imminent
Contingent peril, and, in the exercise of ordinary care
Danger:
Negligence in to prevent injury to them, should have put
Operation. them off before the train started, or should
have stopped and put them off.   This upon
the theory that the two men in the cupola were em-
ployees in charge of the train, were bound to have seen
the boys hanging on to the cars, and to have known the
danger of their riding in that way.   There is no satis-
factory evidence that the men in the cupola of the ca-
boose were employees in charge of the train, and the
plaintiff was seven carlengths from the caboose.   One
of the other boys was on the sixth car, and the others
further away.   However, it may be conceded that the
defendant was charged with notice that the boys were on
the cars.

    In order to charge the defendant with negligence in
failing to observe the humanitarian rule, the boys must
have been in imminent peril from *the operation of the
train*.   The negligence alleged was failing to put the
plaintiff off the train before or after it started.   There
was no allegation that defendant was negligent in fail-
ing to stop and let the boys off in safety at their destina-
tion, or in failing to ascertain where they wanted to stop.
Such an allegation would have put the pleader outside
the humanitarian rule, and would have given plaintiff,
who was a mere trespasser, the status of a passenger.
Thus plaintiff would have pleaded himself out of court.

    The danger he incurred was that incident to being
on the car in motion, and the duty of defendant was
measured by the extent of that peril.   No doubt, holding
to the ladder on the side of a rapidly moving car, is a
dangerous way to travel, but in this instance was the

danger *imminent* in the sense that is required to invoke the humanitarian rule? It is well known that trainmen ride that way. The danger attending the boys in riding the three miles they intended to go was the possibility of their being shaken off by the rapid, swaying motion of the train, or through fright at the rapid motion, caused to jump off. They were not thrown off by the motion of the train, nor is there any evidence that they were likely to be thrown off.

The plaintiff testified, explaining how the seven boys got on, and that three got off as the train started; that he rode to Sutton Avenue and then jumped off when he saw his brother, who jumped off first, lying flat on the ground; that he got on the train for the purpose of riding to Maplewood and got off where he intended to get off.

Joe Stewart, who was younger than Charles, testified that the train developed speed and was rocking from side to side and that he jumped off at Sutton Avenue, and was knocked unconscious. Leonard Prosser mentioned the swinging of the car from side to side; he jumped off at the Sutton Avenue crossing and was unhurt. Jack Prosser, age not given though seemingly the youngest boy, saw the others jump, but hung on until the train stopped at Ellendale. Not one of the boys said anything to indicate that there was the slightest danger of being shaken off; not one of them jumped off or contemplated jumping off because of fright. The three who jumped did so because they arrived at the place where they wanted to stop. Had they remained on until the train stopped, as Jack Prosser did, no one would have been hurt.

The only ground of recovery possible under the humanitarian doctrine was that the trainmen saw the imminent peril of the boys and were negligent in *operating the train* so as to injure them. In each of the cases cited by the appellant, such as Dalton v. M. K. & T. Railway Company, 208 S. W. 828, and Stipetich v. Security Stove Manufacturing Company, 218 S. W. 964, and other cases, the danger to which the plaintiff was

subjected was from the acts of the defendant's employees in operating the appliances of the defendant. The danger to be apprehended cannot be one contingent upon some happening over which the defendant's employees had no control. It is not a contingent danger to a person in peril which brings into operation the humanitarian rule, but a certain danger. [State ex rel. Vulgamott v. Trimble, 253 S. W. 1014; Banks v. Morris & Co., 257 S. W. 482; Dutcher v. Railroad, 241 Mo. 137.] If the trainmen had thought the boys were in imminent danger, they were mistaken, for as it transpired they were not in imminent danger of being thrown off, or of falling off, or losing their heads and jumping off through fright. They were not in danger from anything the defendant's employees did.

The humanitarian rule is what the words imply: consideration of humanity should prevent one from injuring another whom accident, or his own negligence, has placed in the path of danger from the normal acts of the first. Failure to exercise care to prevent injury in such case creates liability. The danger must be imminent, from what the person liable is doing or about to do. It must be the *act*, or the failure to act, of such person which causes the injury before liability is incurred. It is not always failure to obey the promptings of humanity that causes liability to attach for an unfortunate result. One may see another drowning in a pool and, with ready means of assistance, fail to rescue the drowning person; the neglect is inhuman, but no cause of action would accrue on account of it. But if the first, knowing the danger, should open the sluice gates in a customary manner and flood the pool beyond the bather's depth, he would be liable if he failed to attempt a rescue.

II. But for the purpose of the argument, conceding that the plaintiff and the other boys were in imminent peril from the operation of the train, the only danger over which the defendant had control, there was no causal connection

Causal Connection.

between the danger thus created and the injury which ensued. If the plaintiff had hung on to the car until it stopped, as the Prosser boy did, he would not have been hurt. He was not injured by the operation of the train—it was his own voluntary act in jumping off while the train was still in motion that caused the injury. If he had ridden inside, and if the door of the car had been open and he had jumped off at Maplewood, it could not be claimed that the defendant was liable, because his own act caused his injury. He would not have been in danger in the car as long as he remained in it. The fact that he was hanging on the ladder made no difference in the circumstances, because that dangerous position did not cause his injury, and had nothing to do with his jumping off. There is nothing in the evidence to indicate that the plaintiff, or any of the boys, jumped off because they were in danger while riding. They jumped off because they arrived at the place where they wanted to stop.

Since plaintiff was injured through a voluntary act of his own, an act proformed cooly and with previous fixed intention, the defendant is no more liable for the consequences than it would have been if he had been riding in a safe place on the train. The trial court correctly sustained the demurrer to the evidence.

The judgment is affirmed. *Walker, Blair* and *Graves, JJ.,* concur; *Atwood, Woodson* and *Ragland, JJ.,* dissent.