## NEMAN v. KNIGHT.
### No. 9827.

Court of Civil Appeals of Texas. Austin.
Feb. 8, 1950.

Rehearing Denied March 1, 1950.

Saulsbury, Skelton & Everton, by Joe Everton, of Temple, for appellant.

C. B. Bunkley, Jr., of Dallas, for appellee.

ARCHER, Chief Justice.

This is a damage suit based upon the alleged negligence of a truck driver in the employment of the defendant. Plaintiff brought suit as surviving parent of his minor son, who was hanging onto defendant's truck while riding a bicycle, subsequently falling under the rear wheel of the truck and receiving fatal injuries. The case was tried before the court without a jury, and the judgment rendered for plaintiff for $1,480.20.

This appeal is predicated on five points assigned as error, as follows:

By the first point appellant complains of the action of the court in not rendering a judgment in his favor; and by the second, the error of the court in holding the defendant liable under the doctrine of discovered peril; and in holding that the deceased was not negligent in holding on to the truck; and in holding that the deceased, Robert Knight, 13 years old, could not have realized the danger in which he had placed himself; and finally, of the court's holding that the driver, R. C. Williams, was acting within the scope of his employment when he invited guests to ride with him.

This suit was for $35,510, for loss of service of the son, funeral bill, and tombstone in connection with the burial of Robert Knight, the deceased.

Plaintiff alleged that his son was killed by being run over by one of appellant's trucks on June 28, 1946, and further that the son was holding onto the truck while riding a bicycle, with the consent of defendant's agent and employee; that defendant's agent after being advised that he was driving too fast over rough gravel, and having full knowledge of the perilous condition of Robert Knight, failed and refused to use the means within his power to relieve the said Robert Knight from his

perilous condition; that the said agent discovered and had knowledge of the perilous condition of Robert Knight in sufficient time to have prevented injury to the said Robert Knight by the use and exercise of ordinary care in the use of all means at hand with due regard of the safety of himself and of others. That despite this knowledge and the means at hand said agent continued to operate the truck at an excessive and dangerous rate of speed, and continued to increase the speed of said truck, and that this was the proximate cause of the injury and death of the said Robert Knight. Other acts of negligence were pleaded also.

The defendant answered by a plea of contributory negligence; that Robert Knight was a guest, or at most a licensee; that Robert Knight was a trespasser.

The trial court filed his findings of fact and conclusions of law; all of which we believe are supported by the record and in accordance with law, and the judgment should be affirmed.

Donald West, a boy 15 years old, testified:

"Q. You say Robert was holding on to the side of the truck after you got out of the dump ground? A. Yes, sir.

"Q. About how fast was R. C. driving at that time? A. Right after we got out of the dump ground he was driving about thirty miles an hour.

"Q. That was right after you came out? A. Yes, sir, he slowed down then to make the turn.

"Q. When Robert caught hold of the truck you said that R. C. was driving about thirty miles an hour? A. Yes, sir.

"Q. Did Robert ever tell him to slow down? A. Yes, sir, Robert told me to tell him to slow down because he wanted to turn loose.

"Q. About how far had you gotten from the gate to the dump ground when Robert told you to tell him to slow down? A. About fifty yards.

"Q. Did you tell R. C. to slow down? A. Yes, sir.

"Q. What did R. C. do when you told him to slow down? A. He looked over and smiled and put his foot on the accelerator.

"Q. Did he slow down? A. No, sir.

"Q. What, if anything, did he do when you told him to slow down? A. He looked around and smiled.

"Q. Did he increase the speed of his car? A. Yes, sir, he put his foot on the accelerator and speeded up.

"Q. When he put his foot on the accelerator and speeded up do you mean that he started to drive faster? A. Yes, sir.

"Q. About how far did he drive after you told him to slow down in order that Robert could turn loose before Robert was run over? A. About how far did he go?

"Q. Yes, about how far did he go? A. He went about, let's see, it was about fifty yards.

"Q. He went about fifty yards after you told him to slow down so that Robert could turn loose? A. Yes, sir.

"Q. Did you tell him why you wanted him to slow down? A. Yes, sir, I told him to slow down because the gravel was too thick.

"Q. Because the gravel was too thick for Robert to hold on and you wanted him to slow down? A. Yes, sir.

"Q. But he increased his speed? A. Yes, sir.

"Q. And he drove at this increased rate of speed for about fifty yards before Robert was run over? A. Yes, sir.

"Q. About how fast would you say he was driving at the time Robert was run over? A. Between thirty-five and forty.

"Q. Between thirty five and forty miles an hour? A. Yes, sir.

"Q. Now, did you notice Robert Joe shortly after he was run over? A. Yes, sir, I looked back.

"Q. Did R. C. stop the automobile? A. After I looked back I told him to stop and then he stopped.

"Q. Did he stop the automobile? A. Yes, sir.

"Q. When you told him to stop the automobile did you tell him in any louder tone of voice than you did when you told him to

slow it down? A. No, sir, it was about the same.

"Q. You told him in about the same tone of voice when he stopped as you did at the time when you asked him to slow down? A. Yes, sir.

■ The court found, and we believe he was justified from the record, that R. C. Williams, the driver of the truck, had knowledge of and permitted the deceased, Robert Knight, to hold on to the truck; that the truck was being operated at an excessive and dangerous rate of speed under the circumstances then existing, and that due to the speed and the graveled condition of the road the said Robert Knight was then and there in danger of receiving injury, and was in a position of peril; that the driver was requested to reduce his speed, and that at that time the deceased was in danger and in peril; that the driver had such knowledge in time to have prevented the injury by the use of all means at his hand, with due regard for the safety of himself and others.

That after discovering the perilous condition of Robert Knight, the driver failed to apply his brakes and reduce his speed, but wilfully and wantonly increased the speed of the truck, and failed to use ordinary care by the use of means at his command to prevent the injury to said Robert Knight; that the failure to reduce the speed of the truck after discovering the perilous position of the deceased was negligence and a proximate cause of the injury and death of Robert Knight. That the driver was guilty of gross negligence by wilfully increasing the speed of the truck.

■ Damage was allowed in the sum of $1,000 to C. D. Knight, $385 for funeral expenses, and $90 for a tombstone, a total of $1,480 against the defendant, Ben Neman.

"The rule is now well established that, where the defendant discovers the peril of the plaintiff in time to avoid injury by the exercise of ordinary care in the use of means at hand consistent with the safety of others, a new duty arises to exercise such care, and failure to do so creates liability, regardless of the original cause of plaintiff's perilous condition. Hines v. Foreman, Tex.Com.App., 243 S.W. 479; Hays v. Gainesville St. Ry. Co., 70 Tex. 602, 8 S.W. 491, 8 Am.St.Rep. 624; Baker v. Shafter, Tex.Com.App., 231 S.W. 349; St. Louis Southwestern Ry. Co. of Texas v. Cambron, 62 Tex.Civ.App. 465, 131 S.W. 1130; St. Louis B. & M. Ry. Co. v. Cole, Tex.Com. App., 14 S.W.2d 1024." Dallas Ry. & Terminal Co. v. Bankston, Tex.Com.App., 51 S.W.2d 304, 308.

"By the doctrine of discovered peril, as here used, is meant that where the danger of inflicting an injury is discovered by the party inflicting the same, in time to have prevented such injury by the exercise of proper care subsequent to such discovery, and injury occurs as the proximate result of subsequent negligence, the party inflicting such injury will be liable therefor, notwithstanding the previous negligence of the party injured, and but for which the injury would not have occurred.

"This principle of law is well settled in personal injury cases." Furst-Edwards & Co. v. St. Louis S.W. Ry. Co., Tex.Civ.App., 146 S.W. 1024, 1027.

■ We do not believe that the question of contributory negligence is material in this character of a suit.

"The rule for allowing recovery of damages under the doctrine of discovered peril is exacting. The issues arising from primary negligence and contributory negligence become immaterial in passing on the issue of liability under this rule. The basis for recovery rests upon humane principles and public policy, and not upon the negligence or dereliction of the injured person. The sole question for determination is whether there is evidence that the driver of the bus actually discovered the perilous position of the deceased in time to have avoided striking him, by the use of all the means at his command, consistent with the safety of himself, his bus, and his passengers." Parks v. Airline Motor Coaches, 145 Tex. 44, 193 S.W.2d 967, 969.

"In fact, the findings contained in Special Issues Nos. 22 and 31, without additional subsidiary findings, amount to no defense

unless it can be said that the boy, in suddenly turning his bicycle to the right and his failure to give warning of his intention to make said turn, was guilty of contributory negligence as a matter of law, and then where, as in this case, the pleadings and the evidence raise the issue of discovered peril and the jury has found upon that issue in favor of the injured party, the issues of primary negligence and contributory negligence become immaterial. St. Louis, B. & M. Ry. Co. v. Cole et al., Tex.Com.App., 14 S.W.2d 1024; Dallas Railway & Terminal Co. v. Bankston, Tex.Com.App., 51 S.W.2d 304.

\* \* \* \* \* \*

"In the present case, as we have seen, all essential elements of discovered peril have been found against defendant in error. It could make no difference as to the judgment to be rendered that all elements of contributory negligence alleged against the minor plaintiff were found against him, for the reason that contributory negligence is no defense to an action predicated upon the doctrine of discovered peril. Wilson v. Southern Traction Co., 111 Tex. 361, 235 S.W. 663." Montgomery et al. v. Houston Electric Co., 135 Tex. 538, 144 S.W.2d 251, 252.

We believe that the trial court did not err in holding that the driver of the truck was acting within the scope of his employment at the time and on the occasion of the fatal accident.

Williams had been told to take the junk and dump it, this he was doing and was in the course of his employment. "The law on this subject is well settled in this state. The rule is that the master is responsible for the acts of his servant, done within the scope of his agency; that is, in the course of his employment or in the line of his duty with a view of furtherance of his master's business, and not done for a purpose personal to himself. The fact that the servant in committing the act may have exceeded his authority, or even disobeyed his instructions does not alter the rule. International & G. N. Railway v. Anderson, 82 Tex. 516, 520, 17 S.W. 1039, 27 Am.St. Rep. 902; Wright v. Maddox, Tex.Civ.

App., 288 S.W. 560, 564." Friend-Rowe Motor Co. et al. v. Ricci, Tex.Civ.App., 293 S.W. 851, 854.

The judgment of the trial court is affirmed.