William H. PRICE, Respondent,

v.

James NICHOLSON, Appellant.

No. 47765.

Supreme Court of Missouri,

En Banc.

Nov. 14, 1960.

Dissenting Opinion Nov. 17, 1960.

Samuel Richeson, Dearing, Richeson & Weier, Hillsboro, for appellant.

Coleman, Gerhard, Padberg, Montrey, Maloney & Cekovsky, Clayton, for respondent.

HUNTER, Special Judge.

This is an appeal by James Nicholson, defendant-appellant, from a judgment of the Circuit Court of St. Francois County in the sum of $15,000 in favor of plaintiff-respondent, William H. Price, for personal injuries arising out of the collision of two automobiles.

The notice of appeal was filed in the circuit court on July 9, 1959, and this court has appellate jurisdiction. Section 477.-040 RSMo 1949, V.A.M.S.

Defendant contends (1) that the humanitarian doctrine is not available to plaintiff as guest-passenger against his host-driver; (2) that plaintiff's Instructions Nos. 1 and 6 contain error and (3) that the verdict is excessive.

Plaintiff's petition alleged that on January 9, 1957, plaintiff was injured as the result of a collision between an automobile operated southbound on Highway 67 by his host-driver, James Nicholson, and an automobile operated eastbound on Highway 110 by Clifton Kirkpatrick at the intersection of those two highways near Festus. The petition, among other things, charged host-driver, Nicholson, with primary negligence (concurring with the negligence of Kirkpatrick) in driving the automobile at a high, dangerous and excessive rate of

speed under the circumstances, in failing to stop, slacken the speed or swerve so as to avoid striking the Kirkpatrick automobile; and in failing to drive the automobile as close as practicable to the right-hand side of the highway. The petition also charged humanitarian negligence against the host-driver, Nicholson, in failing to stop the vehicle, slacken its speed, swerve, or give a warning, after Nicholson saw plaintiff and the vehicle driven by Kirkpatrick in a position of imminent peril of being struck by Nicholson's automobile and injuring plaintiff.

As to defendant Kirkpatrick the petition alleged primary negligence in failing to keep a proper lookout ahead and laterally, in failing to stop at the stop sign at the intersection, in failing to yield the right of way, in failing to slacken speed or swerve so as to avoid the collision, and, also, humanitarian negligence.

The separate answer of Nicholson was in the form of a general denial. Kirkpatrick's separate answer included a general denial, a plea of joint enterprise between plaintiff and Nicholson and allegations of contributory negligence against plaintiff by reason of joint enterprise and alleged negligence of Nicholson. After filing the answer, the attorney for Kirkpatrick withdrew, and neither Kirkpatrick nor any attorney on his behalf thereafter participated in the trial. Nor has any appeal been filed on behalf of Kirkpatrick.

At the jury trial defendant Nicholson adduced evidence to the following effect: On January 9, 1957, plaintiff and defendant had been working together in St. Louis. Because it commenced to rain, work was terminated about 10:30 a. m., and they started back to Farmington, their residence, in defendant's 1956 Studebaker automobile. It was misting rain, the pavements were wet and the windshield wipers of defendant's car were operating. Visibility was very good. Plaintiff was in the right front seat of the automobile. They proceeded south on U. S. Highway 67 from St. Louis,

through Festus, to the scene of the collision.

At the scene of the collision U. S. Highway 67 runs in a generally north-south direction. It is a four-lane highway consisting of two lanes for southbound traffic and two lanes for northbound traffic separated by a dividing strip of grass. North of the intersection U. S. Highway 67 has a gradual curve to the left as one proceeds south. The entrance, from U. S. Highway 67 to Highway 110, is situated on the western side of Highway 67, goes off in a "prong" fashion, and is some distance south of the mentioned gradual curve. The eastbound exit of Highway 110 is situated at the western edge of Highway 67, is 519 feet south of the mentioned entrance, and intersects Highway 67 at a right angle. The two southbound lanes of Highway 67 total twenty-four feet in width, and have a hard dirt with a gravel shoulder on the western side of 14 feet width. There is a "stop sign" and also a "yield right-of-way" sign for eastbound traffic at the exit of Highway 110.

Defendant was driving in the outside (westernmost) lane at approximately 35 miles per hour. As defendant's car rounded the mentioned curve, plaintiff from his front seat position could see the intersection of Highway 110. There were no other automobiles in sight in any direction other than Kirkpatrick's Dodge.

At this point we refer directly to plaintiff's testimony for his version as to what occurred. Plaintiff then saw the Kirkpatrick Dodge car on 110 at 67. Its bumper was right at the edge of the pavement of 67—possibly half a car's length from that pavement. It was rolling easterly very slowly. He continued to watch it until the collision occurred. It just stayed moving slow and steady, too slow to estimate, and never stopped. "About where that prong that goes into DeSoto, that northbound lane you're talking about, he [Mr. Nicholson] went into the inside [left] lane of 67." At that time Mr. Nicholson slowed down

momentarily to about 30 and then put his foot back on the gas. The Dodge car at that time had reached the center of the two southbound lanes on 67. The middle of the Dodge was at the center line. I hollered, "Look out for that car." Nicholson's car was then about 200 feet from the Kirkpatrick automobile and was travelling at a speed of about 35 miles per hour. Nicholson jammed the brakes on before the collision. Nicholson's car was as far to the left as he could go without getting off the pavement. "We just kept going until we crashed into him." The front end of the Nicholson car hit the side of the Dodge on that inside lane of 67. As a result of the impact of the two cars, plaintiff was thrown against and partly through the windshield and severely injured. Plaintiff did not hear anyone sound a horn.

We next note defendant's version of the occurrence commencing with when his car rounded the mentioned curve. When he first saw the Dodge on 110 he believed it was stopped. Its front wheels were "pretty close to" and might have been on the edge of Highway 67. Defendant saw the Dodge right after he got out of that curve. Defendant "guessed" he was 100 feet or so away from the Dodge at that time. Defendant was travelling in the outside southbound lane. His windshield wipers were on and he had a clear view. He continued to watch the Dodge until the impact occurred. He sounded his horn. He was travelling 30 to 35 miles per hour. He put on his brakes, slowed down 5 to 10 miles an hour slower. When about six or seven car lengths away from the Dodge (18 or 20 feet being a car length), he changed position from one side of the highway to the other. "Q. And then did you continue that same speed up to the point of collision? A. When I changed lanes I just you know kept on going. Q. Between the time you changed lanes and the time the collision took place what was the fastest speed your car attained? A. I guess about thirty-five." He was three or four car lengths away, he guessed, from the Dodge when the Dodge's front wheels crossed into the inside lane. "Q. Well, you told me you blew your horn once when you first saw it [Dodge car] then later you blew your horn a couple more times, you told me that you had slowed your car down and changed lanes then you increased your speed to thirty-five miles an hour; did you do anything in the operation of your car before the collision? A. Just put on my brakes. * * * I put my brakes on as soon as I seen I was going to hit him"— when "two or three car lengths, or four car lengths away." Defendant's car front hit the Dodge's front right fender. The accident occurred with defendant's car on the left portion of the inside lane—"right on the edge of the highway." His car brakes were in good working condition and he had new tires. Under the existing conditions he could stop his car "in sixty or seventy-five feet."

On the witness stand defendant's version differed somewhat from that given in his deposition as shown in evidence. He stated he first saw the Dodge when he was coming out of the curve and when it was about 100 feet away. "Q. Could it have been as much as 500 feet? * * * A. Could have been around three. I don't think it'd be five." He thought it was stopped. He honked his horn while about three or four car lengths away and went into the inside lane while still three or four car lengths away. The Dodge "stopped there once [at the highway] and he moved out in front of me. * * * I stopped in the right hand lane. * * * I was about three, four car lengths from it when it pulled out in front of me"—"about seventy-five, eighty" feet away. "I honked my horn and I put on my brakes and I went off—and one tire [left-hand side] of my car went off the side of the road. I was doing about 35 miles an hour before I hit him. I applied my brakes and slowed down but I don't know how much. I went off to the left"—"about two left tires got off" the left pavement.

■ In determining whether the trial court erred in ruling that plaintiff had made

a submissible jury case under the humanitarian doctrine this court, on appeal by defendant, in reviewing the evidence must take as true every fact and circumstance favorable to plaintiff which the evidence tends to prove, and give to plaintiff the benefit of all reasonable inferences which may be fairly drawn therefrom. Plaintiff is accorded the benefit of any part of defendant's evidence favorable to him and not contradicted by plaintiff's own testimony nor contrary to plaintiff's fundamental theory of recovery. Capra v. Phillips Investment Co., Mo., 302 S.W.2d 924; Catanzaro v. McKay, Mo., 277 S.W.2d 566.

Defendant's first contention is that the trial court erred to defendant's prejudice in giving Instruction No. 1 at plaintiff's request because the doctrine of humanitarian negligence submitted by the instruction was not available to this guest-passenger plaintiff against his host-driver defendant. Defendant's contention as ventilated in his brief is that "no true humanitarian case can [ever] be made by the guest-passenger against the host-driver."

▇ Defendant and plaintiff agree that this issue has never been placed for decision before any appellate court of this state. Both cite Missouri cases indicating by dicta certain attitudes toward the subject by those participating in the opinions. These cases necessarily will be examined for reasons for or against the applicability of the doctrine, as will all other reasons advanced by either party.

The fundamentals determinative of the applicability are set out in the time-honored case of Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484: "The constitutive facts of a cause of action under the humanitarian rule, stated in their simplest terms, without any of the refinements, limitations, or exceptions which might arise on a particular state of facts, are contained in this formula: '(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured.' Evidence tending to prove these facts makes a prima facie case for plaintiff."

The Banks case statement of the constitutive facts permitting the application of the humanitarian doctrine does not in and of itself declare that the doctrine is not applicable to the situation of a passenger-guest suing his host-driver. We must look elsewhere to see if a refinement, limitation or exception has been made to the doctrine as there stated that either excludes its application to a guest-passenger suing his host-driver or contains the basis for its exclusion.

In McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135, a guest-passenger sued his host-driver under the humanitarian doctrine for his injuries sustained when the host's car collided with another car in an intersection. The host-driver contended his passenger failed to make a case under that doctrine. This court indicated the facts presented a humanitarian submission but reversed and remanded the case for a new trial because the instructions assumed a material controverted fact. No contention was made in the McCombs case that the doctrine was not applicable in guest-passenger suits against their host-drivers and no reasons on that basis were suggested against its application.

In Evans v. Farmers Elevator Co., 347 Mo. 326, 147 S.W.2d 593, plaintiff, a thirteen year old boy, was riding as a guest in the front seat of a car driven by defendant, his grandmother. Her car collided with a truck. The cause was submitted under the humanitarian doctrine, and the jury returned a verdict for plaintiff for $10,000. According to the opinion, 147 S.W.2d loc. cit. 597, on appeal "respondent [contended], that 'the case is not governed by the humanitarian doctrine; * * * that plaintiff is

entitled to rely upon primary negligence [only] * * *.'" This court stated, 147 S.W.2d loc. cit. 597, "We hold, therefore, that the evidence was sufficient to make a submissible case for plaintiff under the humanitarian doctrine," but reversed and remanded the cause for a new trial because the verdict-directing and damage instructions were erroneous for reasons not pertinent here.

In Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420, plaintiff, a guest-passenger sued under the humanitarian doctrine and received a judgment for personal injuries sustained when he leaped from the bed of a runaway truck abandoned by defendant's driver-employee. On appeal it was held that plaintiff failed to make a submissible case under the humanitarian doctrine because before plaintiff was in a position of imminent peril the driver had abandoned the truck and was powerless thereafter to do anything to prevent plaintiff's injury. Noting that plaintiff had made a submissible case on primary negligence, the case was remanded for a new trial.

In Stitzell v. Arthur Morgan Trucking Co., Mo.App., 118 S.W.2d 49, a guest-passenger sued her host-driver under the humanitarian doctrine for her injuries suffered when defendant's car collided with a trailer-truck. On appeal, the judgment in her favor was reversed and the case remanded for the reason, among others, that the petition failed to state defendant breached any duty owing to plaintiff but merely alleged defendant could have seen the trailer in a position of imminent peril in time to have avoided the collision.

In Thompson v. Gipson, Mo., 277 S.W.2d 527, plaintiff sued and in the trial court recovered for her personal injuries sustained while riding as a guest in the automobile operated by her host-daughter defendant when it collided with an approaching automobile. On appeal, this court reversed the judgment for errors in the instructions. Noting that defendant did not contend that

in no event did plaintiff not have a right to recover under the humanitarian doctrine but only that plaintiff failed to show when imminent peril arose and defendant's ability thereafter to prevent the accident, the court commented, loc. cit. 530: "Inasmuch as the case is to be remanded for a new trial, at which the evidence may more definitely establish whether a submissible case exists under the humanitarian doctrine, we need not here further consider this assignment." The court additionally said, loc. cit. 532: "And, finally, we think it extremely doubtful that humanitarian negligence, in its true sense, is applicable to the facts in this case. It is tacitly admitted that plaintiff is not chargeable with any negligence, and it is difficult, therefore, to see how or in what manner plaintiff, as defendant's guest, could come into a position of peril other than through the antecedent negligence of defendant or Mrs. Bohlig [driver of the other car], or both of them. Consequently, it seems clear that, as to her passenger, defendant's negligence, if any, was primary rather than humanitarian."

In Downing v. Dixon, Mo., 313 S.W.2d 644, plaintiff passenger sued his host-driver for injuries resulting from a two-car collision. The claim against the host-driver was submitted under the humanitarian doctrine. The court noted, loc. cit. 650, that defendant "Dixon seems to question, casually, whether a guest may proceed in any event against his own driver by a submission of humanitarian negligence, citing Thompson v. Gipson, Mo., 277 S.W.2d 527. The question is not properly included as a point of the brief under our rules, nor is it actually briefed. Under those circumstances we find it unnecessary to decide it." The cause was remanded on other grounds.

In Downing v. Dixon, Mo.App., 314 S.W.2d 927, 929, the Springfield Court of Appeals stated, "We find it unnecessary, as did the Supreme Court in the companion case, to determine whether a guest properly may proceed against her host driver on humanitarian negligence."

In the most recent case on the subject, Lay v. McGrane, Mo., 331 S.W.2d 592, plaintiff passenger recovered under the humanitarian doctrine against his host-driver. Noting that the host-driver defendant did not contend on appeal that the humanitarian doctrine is inapplicable as between such passenger and driver, this court assumed without deciding that such a submission is proper. We reversed the judgment as to defendant driver and ordered a new trial on the issue of liability only for error in the verdict-directing instruction. In a separate concurring opinion two members of this court took opportunity to state their view that the humanitarian negligence rule is not applicable to a situation where a plaintiff is riding as a guest in defendant's automobile. The assigned reasons in the concurring opinion were, loc. cit. 600: (1) "A position of peril from the vehicle operated by the defendant (not danger to a passenger from driving the car against another object) is essential"; (2) The conduct in driving a car with a guest into collision with another car or object should be classed as primary negligence. "Such peril was being created by the driver as he moved toward the other car." It is "primary and not humanitarian negligence thus to take another person into such peril," and (3) "where there is no claim of contributory negligence on the part of the guest, it is difficult to see what purpose could be served by a humanitarian submission."

To these suggested reasons adopted by defendant as to why the humanitarian doctrine is not applicable to the suit by the guest-passenger against his driver-host defendant additionally states "the humanitarian situation could not in any event arise until the peril became certain, or imminent; if it does become certain, it does so through a combination of two instrumentalities, over one of which defendant has control, and over the other of which he does not. Once it becomes certain, partly through defendant's primary or antecedent negligence, defendant has passed the position at which he can stop or swerve and avoid the collision, and thus the operation of the humanitarian doctrine is made impossible."

We proceed to examine these suggested reasons, commencing with the last given. Viewing the evidence in the light most favorable to plaintiff, as we must, we note that defendant was constantly watching the Kirkpatrick Dodge car from the time defendant rounded the mentioned curve. He could see that it was steadily moving across the intersection of the two highways and across defendant's path. Defendant could stop his car in 60 or 75 feet. He slowed down his car from 35 miles per hour to 30 or 25 miles per hour momentarily, and changed lanes. He then put his foot back on the gas and increased his speed to 35 miles per hour again. He hit the Kirkpatrick car while both cars were in the easternmost lane. Even under defendant's own version of the accident defendant's car was about 75 or 80 feet away when the Kirkpatrick car pulled out in front of him.

We think it evident that the jury properly could have found that plaintiff and the automobile in which he rode were in imminent peril, at least from the moment the Kirkpatrick Dodge car had reached the center line of the two southbound lanes on Highway 67 where it partially blocked both lanes. At that point the middle of the Dodge was at the center line. According to plaintiff, the Nicholson car was still 200 feet away and travelling about 35 miles per hour and moving into the easternmost of the two lanes directly in the path of the slowing oncoming Dodge. We think the peril was certain and imminent within the authorities relied upon by defendant. See, McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704; McCombs v. Ellsberry, supra. Defendant was watching the Dodge and such peril was or should have been apparent to him. The jury could well find that defendant in the exercise of the highest degree of care, with the means at hand, with safety to himself, his car and its plaintiff occupant could have stopped his car, or turned the same aside, to his right, and have avoided the collision.

Cf., Evans v. Farmers Elevator Co., supra; Lay v. McGrane, supra.

Thus, we fail to find any merit in defendant's contention that the doctrine cannot apply because once the peril became certain defendant had passed the position where he could stop or swerve and avoid the collision.

Nor is there any determining merit in defendant's suggestion that the peril becomes certain through a combination of two instrumentalities, over one of which defendant has control and the other he does not and thereby eliminates the applicability of the doctrine. This factor exists in numerous situations where no one challenges the applicability of the doctrine and in and of itself provides no sound reason for denying the availability of the doctrine. It probably exists in all two-car collisions where the driver of one car is suing the driver of the other car, or a passenger in one car is suing the driver of the other car. In two-car collision cases the peril,—danger, cause or source of injury cannot fairly be said to arise or result from just one car. The peril or position of peril of plaintiff is the result of the relative position and movement of the two cars about to collide. Frequently both drivers share the blame for creating the perilous situation. In such a situation of peril if the driver of one of them has notice thereof, actual or constructive, with the present ability, with the means at hand, to avert the injury without injury to himself or others and fails to exercise the highest degree of care to do so it has never been held to be a defense to a suit by the injured party under the humanitarian doctrine that plaintiff's position of peril arose in the first instance from the position and movement of the two cars about to collide rather than solely from the one which he occupied.

The next suggested reason is that a position of peril from the vehicle operated by the defendant, and not danger to a passenger from driving the car against another object, is essential. Under the facts presented, plaintiff was imperiled by his position as passenger in defendant's car moving into collision with another car, and when the collision occurred he was thrown violently against the interior of and partly through the windshield of his host's car. To require more in order to satisfy the suggested reason would be to add a new element or criterion to the humanitarian doctrine different from any heretofore expressed or required. The suggested reason is in reality a new proposed requirement and does not within itself contain its own justification.

Another suggestion for nonapplicability of the doctrine is that the conduct of the driver in driving a car with a guest into collision with another car or object *should* be classed as primary negligence. The fact is that in many if not most humanitarian cases the humanitarian negligence is but a continuance of earlier primary negligence seized upon at the very moment that plaintiff is in imminent peril. That this is so has never before, of itself, been suggested as a reason to deny the applicability of the doctrine. Under such a contention the defense of contributory negligence would be a complete bar to any recovery, although the particular event might otherwise present all of the constitutive facts of a cause of action under the humanitarian doctrine. Such a result would seem contrary to the basic need and purpose that gave birth and sustenance to the humanitarian doctrine. As so well said in the Banks decision, supra, 257 S.W. loc. cit. 484: "The doctrine from which the rule has been evolved is something more than an exception to the law of contributory negligence. It 'proceeds upon the precepts of humanity and of natural justice to the end that every person shall exercise ordinary care for the preservation of another after seeing him in peril or about to become imperiled, when such injury may be averted without injury to others.'"

We are unwilling to make a broad denial of the availability of the doctrine by taking the position that when a host-driver of a car drives it into collision with another car

or object, no matter what the other relevant facts may be his passenger-guest has available only a primary negligence submission.

█ Defendant suggests the doctrine is not available to anyone who is not charged with contributory negligence. Indeed, some states do take that view, but this state has long held that the presence or absence of contributory negligence is immaterial to the applicability of the doctrine. See, Freeman v. Berberich, 332 Mo. 831, 60 S.W.2d 393; Mooney v. Terminal R. Ass'n of St. Louis, 352 Mo. 245, 176 S.W.2d 605 [6]; Sheerin v. St. Louis Public Service Co., Mo., 300 S.W.2d 483; 65 C.J.S. Negligence § 137b, page 764; Annotations, 25 A.L.R.2d 254, 289; 171 A.L.R. 413.

Looking to what other states do on the comparable question of whether the last clear chance doctrine is applicable to suits by guest-passengers against their host-drivers, we neither found nor were cited to any that held that the mere relationship of driver and passenger prevented its applicability. Of the six cases our research revealed, the doctrine was applied apparently without challenge such as made here.

In Prather's Adm'r v. Allen, 291 Ky. 353, 164 S.W.2d 402, decedent passenger, obviously intoxicated, insisted on standing on the running board of defendant's truck as it was about to resume its journey. Defendant advised him to get back in the truck, that he might get hurt. Deceased declined. Defendant started the truck and proceeded several hundred yards along a very rough road at a substantial speed. Decedent· fell from the truck and was killed. After finding decedent guilty of contributory negligence as a matter of law, the Kentucky Court approved the application of its humanitarian doctrine to permit recovery, saying, 164 S.W.2d loc. cit. 403: " * * * the decedent was clearly in a position of peril while on the running board if he was so intoxicated as to be incapable of realizing his danger and taking ordinary precautions to guard against it. One is no more justified in starting up a motor vehicle [and driving it at such speed on such a road] with an adult on the running board in a helpless condition as a result of intoxication than he would be in doing so with a very young child on the running board."

In Richardson v. State, 203 Md. 426, 101 A.2d 213, 44 A.L.R.2d 231, a seventeen year old boy was thrown from the body of a truck under circumstances under which the defendant had the last opportunity to avoid his injury. The doctrine was deemed applicable.

In Chadwick v. City of New York, 301 N.Y. 176, 93 N.E.2d 625, a ten year old boy was riding as a passenger on the front fender and was bounced off, dragged some distance, and killed as the truck travelled on unpaved, bumpy road. Recovery under the last clear chance doctrine was approved.

In Tenney v. Enkeball, 62 Ariz. 416, 158 P.2d 519, the driver of defendant's truck drove several blocks with plaintiff on the running board in a position which the driver knew to be dangerous. Recovery under the last clear chance doctrine was approved. See, also, Turenne v. Smith, 215 Minn. 64, 9 N.W.2d 409 (discovered peril), and Neman v. Knight, Tex.Civ.App., 227 S.W.2d 606. In Monday v. Millsaps, 37 Tenn. App. 371, 264 S.W.2d 6, plaintiff-passengers injured in a two-car collision sued the estate of their host-driver and the owner of the other vehicle. The court charged the jury under the doctrine of last clear chance and plaintiff's resultant verdict was approved on appeal.

It is apparent from prior statements in opinions of this court that there is thoughtful feeling that the humanitarian doctrine born originally of necessity was never intended to be used in a case such as we have before us. There are reasons for that feeling. In 65 C.J.S. Negligence § 136, page 759, it is stated, " * * * the doctrine is one involving nice distinctions, often of a technical nature, and the courts should be wary in extending its application." Certainly, a submission under the humanitarian doctrine is more technical, complicated and

subject to misunderstanding by a lay jury than the submission on primary negligence would be. Further, by submitting his case under the doctrine this plaintiff has only increased his burden with no offsetting benefits. By submitting under the doctrine he has had to abandon defendant-driver's antecedent primary negligence and rely on his ability to establish his imminent peril, defendant's notice thereof, defendant's ability with the means at hand to have thereafter averted the injury without injury to himself or others, and defendant's failure to exercise the highest degree of care to avert such injury.

A decision holding the doctrine applicable to a nonnegligent plaintiff-passenger suing his host-driver for injuries suffered in a two-car collision when the guest-passenger admittedly has no practical reason for resorting to it, and has an adequate remedy, easier for a jury to understand and not as conducive to technical errors, through a primary negligence submission, while technically not an extension of the doctrine admittedly would not advance the cause of justice, and, in the thinking of some, would detract from it. In such a situation there should be a voluntary refraining from its use, if for no other reason, than to minimize the possibility of error in submission and result.

■ Yet in our final analysis we must recognize that *if* plaintiff has been successful in submitting his case under the complicated humanitarian doctrine, without legal error and without confusing or misdirecting the jury so as to warrant retrial, his selection of a humanitarian submission resulted only in increasing his burden and did not in any way prejudice defendant. Absent error and prejudice, we are without sound legal basis for and are unwilling to reverse this judgment.

■ Defendant contends respondent's Instruction No. 1 permitted the jury to find that plaintiff was in a position of peril when defendant's automobile was "at or near" the intersection and Kirkpatrick's automo-

bile was "at or near" the intersection, which unduly broadened the danger zone and gave the jury a roving commission. The pertinent portion of the lengthy instruction provides: " * * * and if you further find and believe from the evidence that *at the time and place mentioned in evidence* the plaintiff, William H. Price, was a passenger in the said Nicholson automobile, and that *at said time and place* the Nicholson automobile and the Kirkpatrick automobile *were* in imminent peril of striking and colliding with each other and injuring the plaintiff * * * and * * * defendant, James Nicholson, saw, or by the exercise of the highest degree of care could have seen the said automobile and the plaintiff in said position of imminent peril, if any * * *." (Italics ours.)

Instruction No. 2, to which no objection is made, instructs that "by the term 'imminent peril' is meant a place where there is certain danger, and not a place where there is just a mere possibility of an injury occurring."

■ A reading of the entire instruction reveals that the italicized words "at said time and place" reasonably and grammatically refer to the immediately preceding italicized clause "at the time and place mentioned in evidence." Thus, the jury was directed to refer to the time and place mentioned in evidence and required to find that at said time and place the automobiles, and inferentially the plaintiff, were in imminent peril. It is well settled that no duty on a defendant to act arises until plaintiff is actually in a position of imminent peril, and that when he is in a position of imminent peril is a question for the jury under all the evidence. Harrington v. Thompson, Mo., 243 S.W.2d 519. As in the Harrington case where a similar contention was found to be without merit, the instruction does require a finding that plaintiff was in imminent peril and leaves it to the jury to make that finding limiting it to the time and place mentioned in evidence. The in-

struction does not contemplate liability predicated on the approach to a position of imminent peril. See, also, Wyckoff v. Davis, Mo., 297 S.W.2d 490, 496.

Inherent in defendant's criticism is the suggestion that by using the phrase "at the time and place mentioned in evidence" the jury is permitted to find that plaintiff was in a position of peril at a place where and when as a matter of law he could not have been in imminent peril. The instruction does not tell the jury or suggest to it that plaintiff was in a position of peril at any specific time or place. It does not affirmatively place a duty on defendant to act before plaintiff was in imminent peril. It does not contain a misstatement as to where imminent peril began, nor make it likely that the jury will find that plaintiff was in a position of imminent peril at a time and place where and when he could not have been in such position. To require more as defendant would have us do, in effect would require a plaintiff before he has prepared his instruction to determine the exact place and time prior to which he could not as a matter of law have been in a position of imminent peril. This is both unrealistic and unnecessary to a fair submission. As stated in the Harrington case, 243 S.W.2d loc. cit. 527, any such requirement "tends to encroach upon the province of the jury, places an unnecessary burden upon the plaintiff, and may tend to confuse rather than to clarify." It is not reasonable to believe that the jury under the evidence in this case and under the mentioned instructions considered together could have been led to believe that it could properly find that plaintiff was in a position of imminent peril at a time and place when and where he could not as a matter of law have been in imminent peril. In this it is distinguishable from the situation presented in Ornder v. Childers, Mo., 327 S.W.2d 913. In the Ornder case the instruction contained a misstatement as to where imminent peril began. We find no merit in defendant's contention.

Defendant's next contention is that Instruction No. 6 given to the jury at the request of plaintiff is erroneous in that it ignores and does not require a finding of the element of proximate causation of defendant's concurring negligence; is in conflict with Instruction No. 4 and injects the false issue that defendant was using the negligence of Kirkpatrick as a defense. Instruction No. 6 reads in part that if the jury finds from the evidence and the instructions that the negligence of Nicholson, "no matter how great," and the negligence of Kirkpatrick, "no matter how great," concurred to injure the plaintiff then it would be its duty to find against both defendants, "because if both defendants were negligent in any respect submitted to you in these instructions, * * * then neither defendant, even if less negligent than the other defendant, could make use of the concurring negligence of such other defendant to defeat the claim of the plaintiff against both defendants."

In attacking Instruction No. 6, defendant cites Rothweiler v. St. Louis Public Service Co., Mo., 234 S.W. 552, and Schneider v. St. Louis Public Service Co., Mo., 238 S.W.2d 350.

Plaintiff's Instruction No. 6 is identical to the *first paragraph* of the instruction contained in the Rothweiler case, supra, and that first paragraph was not found to be prejudicially erroneous. Rather, it was the second paragraph not used in the instant case that was condemned in the Rothweiler case. The Schneider case, supra, relied upon by defendant, referred only to the second paragraph of the Rothweiler instruction and thus is not applicable to Instruction No. 6. In the case of Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111, 115, the court considered the mentioned language of Instruction No. 6 and held it was not prejudicially erroneous but recommended it be replaced. In Ketcham v. Thomas, Mo., 283 S.W.2d 642, 647, this language was again held not prejudicially erroneous, the court noting that a purpose of the instruction was to advise the jury

**12**

that in determining the question of liability of the two defendants, no consideration was to be given to the comparative degrees of negligence between them. For a more thorough treatment of the question reference should be made to that case. Instruction No. 6 does require a finding that the negligence of both defendants "directly concurred, combined and contributed to cause" the plaintiff injury and thereby requires a finding of the element of proximate cause.

What we have said also disposes of defendant's contention of conflict between Instruction Nos. 4 and 6. Instruction No. 4 given at defendant's request is a converse of certain of the necessary elements of plaintiff's verdict-directing Instruction No. 1. We find no conflict in the two instructions.

Defendant's final contention is that the verdict of $15,000 is excessive.

■ We briefly describe plaintiff's injuries according to plaintiff's evidence, noting defendant produced no medical evidence. Plaintiff suffered three large, permanent scars of the forehead and eyelid and two additional permanent scars of the right cheek and lower lip; a large fracture of the skull six centimeters in length, and a smaller fracture of the right robital rim; there was bleeding in the right eye with blurring of vision; multiple abrasions of the scalp, a cerebral concussion; dizziness, nausea, vomiting; headaches persisting over a two-year period and while not as severe still recurring at the time of trial; injury to and resultant loss of seven natural teeth requiring in some instances removal thereof, removal of nerves thereof, and, again in some instances, capping; loss of a lower partial plate; a permanent numbness of the right forehead in the distribution of the fifth nerve, the opthalmic branch on the right. He is unable to eat properly because of the condition of and lack of teeth. He lost $966.50 in wages and $857 in hospital, medical and dental expenses.

■ Considering this evidence and having in mind that the jury saw the plaintiff and had a better opportunity to understand the extent of his disfiguration and other physically visible damage, we are not prepared to say the jury's verdict is excessive. Unless a jury's verdict is grossly excessive or inadequate, an appellate court should not set aside or disturb the verdict. McCarthy v. Sebben, Mo., 331 S.W.2d 601.

For the reasons stated, the judgment is affirmed.

WESTHUES, EAGER, LEEDY and HOLLINGSWORTH, JJ., concur.

STORCKMAN, J., dissents in separate opinion and concurs in dissenting opinion of HYDE, C. J.

HYDE, C. J., dissents in separate opinion and concurs in dissenting opinion of STORCKMAN, J.

DALTON, J., dissents and concurs in dissenting opinions of HYDE, C. J., and STORCKMAN, J.

STORCKMAN, Judge (dissenting).

I cannot agree that the doctrine of humanitarian negligence should be extended and applied to the facts of this case. The rules of primary negligence as well as the humanitarian doctrine involve "precepts of humanity and natural justice". The last clear chance or humanitarian doctrine was evolved to permit a recovery where the remedy on the basis of primary negligence was inadequate; the emphasis was shifted to proximate cause, or the last clear chance to avoid the casualty and then the humanitarian rule. In its very nature, the humanitarian rule was developed later and as a supplement to primary negligence. See Davies v. Mann, 10 M.N.W. 546, 152 Reprint 588, 19 E.R.C. 190.

As recognized in the majority opinion, the doctrine involves "nice distinctions, often of a technical nature, and the courts should be wary in extending its application." 65 C.J.S. Negligence § 136, p. 759.

This statement is sound and a sufficient reason for not extending the doctrine to a case of this type where the result most likely would be added confusion in an area that needs simplification. The niceties of "imminent peril" should not be inflicted upon a jury needlessly, nor for that matter upon the court and counsel. Plaintiff's verdict-directing instruction demonstrates this. Among other unnecessary things, it requires the jury to find that the defendant "saw, or by the exercise of the highest degree of care could have seen * * * the Plaintiff in said position of imminent peril". The jury must have been mystified by this when the plaintiff was on the seat beside the defendant at all times and they were both in the same amount of peril. Nevertheless, the jury had to determine when the peril became imminent and if thereafter the defendant could have avoided hitting the other car when the case could have been submitted on the unadorned primary negligence issue of failure to stop or swerve the automobile.

I agree with the reasoning of Judge Hyde in his separate concurring opinion in Lay v. McGrane, Mo., 331 S.W.2d 592, 600, and adopt it as a part of this dissent.

The cases from other states, cited and discussed in the majority opinion, are not persuasive on the facts of this case. Generally, they are ones where the passenger was riding on the running board, fender, or other exposed portions of the motor vehicle so that the passenger was in imminent peril of being injured by the operation of the vehicle alone. First, these cases involve elements of willful or wanton conduct on the defendant's part which ordinarily permits a recovery in spite of the contributory negligence of the plaintiff. 65 C.J.S. Negligence § 131, p. 751, and § 136, p. 759(51).

Then, too, the court decisions of this state indicate a recovery may be had under the humanitarian doctrine where the plaintiff's peril and injury result from the defendant's operation of the instrumentality

under his control independently of other agencies or causes. See Stewart v. Missouri Pac. R. Co., 308 Mo. 383, 272 S.W. 694, 695[1]; Baldwin v. Wells, Mo.App., 27 S.W.2d 435, 436[5]. But this rule would not permit the application of the humanitarian rule to the facts of this case. We are not justified in putting all guest-passenger and host-driver cases in the same category. There may be unusual situations where the rule should properly be applied, but this is not one of them.

An attempt to fit the facts of this case into the component parts of a humanitarian case as listed in Banks v. Morris & Co. produces more differences and incongruities than similarities. As stated in the Lay case, the "plaintiff is never in a position of imminent peril from the car defendant is operating."

This is not intended to be a complete statement of the reasons for not applying the humanitarian doctrine in this situation, but to me they appear sufficient. If we take this turn, I fear we will go further into the wilderness of our humanitarian rule. Therefore, I dissent.

HYDE, Chief Justice (dissenting).

I respectfully dissent from the principal opinion adopted in this case as the opinion of the Court. I think it should be noted that the adopted opinion relies on cases from other states that are in conflict with our decision en banc in McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704, 707. In the McClanahan case, a boy was clinging to handholds on the outside of a streetcar and it was alleged that the operator, knowing of his position of peril, accelerated the speed of the car, violently jerking it, causing the boy to be thrown from the car and injured. The St. Louis Court of Appeals held these facts justified submission under the humanitarian rule (McClanahan v. St. Louis Public Service Co., 242 S.W.2d 265) but transferred the case here. We held: "Plaintiff could not have been in a position of peril, that is,

in imminent peril, as contemplated by the humanitarian rule, until the motorman accelerated and jerked the streetcar." We further held that, thereafter, it was too late for the operation of the humanitarian rule. We said, while the jury could have reasonably found that the act of the operator was either primary negligence or wilful and wanton negligence, "[I]f the defendant's conduct was antecedent to the time plaintiff was in imminent peril, and if the effect of defendant's conduct was immediate in causing plaintiff's injury, or if when plaintiff first was in imminent peril defendant did not thereafter have time to avert the casualty, there was no room for the application of the humanitarian rule." Citing also Blaser v. Coleman, Banc, 358 Mo. 157, 213 S.W.2d 420; Smith v. Siedhoff, Mo.Sup., Banc, 209 S.W.2d 233, in each of which the plaintiff therein also was injured almost immediately after the act of the defendant which was claimed to have created his imminent peril.

Prather's Adm'r v. Allen, 291 Ky. 353, 164 S.W.2d 402; Richardson v. State, 203 Md. 426, 101 A.2d 213, 44 A.L.R.2d 231; and Tenney v. Enkeball, 62 Ariz. 416, 158 P.2d 519; on which the principal opinion herein relies, are all cases in which a person was riding on the running board or fender of a car and was injured by falling from it, because of the subsequent movements of the car. In holding a humanitarian or last clear chance case was made, on the basis of the plaintiff being in a position of imminent peril before he was thrown off, they are directly in conflict with McClanahan v. St. Louis Public Service Co., supra, as well as Blaser v. Coleman, supra; Smith v. Siedhoff, supra, and other cases in which we have followed these same well-settled principles as to the application of our humanitarian rule. As pointed out in the McClanahan case, conduct of a driver which disregards the safety of a person in an exposed dangerous situation on the side of a vehicle may be wilful and wanton conduct which would afford a basis for a negligent plaintiff to recover. I believe it

would have been proper to permit recovery on the basis of wilful and wanton negligence, in several of these cases from other states cited in the principal opinion, but I think they have confused the humanitarian or last chance rule with the wilful and wanton negligence rule. The Texas case cited in the principal opinion, Neman v. Knight, Tex.Civ.App., 227 S.W.2d 606, really allowed recovery on the basis of wilful and wanton negligence, in increasing speed of a truck when a boy on a bicycle was holding onto it. My view is that the principal opinion, by citing with approval these cases from other states which have followed different views from ours concerning the humanitarian rule, fails to recognize that they are in conflict with our law as stated in the McClanahan case, and the others of this court announcing the same principles; and that is one of the reasons I think it is unsound in applying the humanitarian rule to the situation in this case.

It is further my view that the humanitarian rule only applies when the plaintiff's peril from a defendant's vehicle is created by his own act or by the act of a person other than its driver. Usually it is created by the plaintiff's negligence; and the Restatement of Torts limits the last chance rule to that. Restatement of Torts, Secs. 479–480. However, it could be caused by the act of a third person, such as pushing the plaintiff off the sidewalk in front of an approaching car. Of course, the primary purpose of the humanitarian rule was to relieve plaintiff from the defense of contributory negligence, when he was in a position of imminent peril caused by his own negligence, by placing a duty on the driver of a vehicle, from which he was in danger, to avoid striking plaintiff if he could do so by the exercise of due care. It seems to me to be an unwarranted extension of the humanitarian rule (and one that will add great confusion to our law) to attempt to apply it to a situation where the plaintiff is riding as a guest in the defendant's automobile. In this case, a humanitarian negligence submission was completely unneces-

sary, and in fact was unduly restrictive, because there was no claim of any contributory negligence on the part of plaintiff and he could have had a better case for recovery on primary negligence which could have been shown by acts of negligence prior to the last point at which it would have been possible for defendant to have stopped or swerved before reaching the point of collision.

I think the inapplicability of the humanitarian rule, in this case, is shown by the fact that plaintiff and defendant were at all times in the same amount of peril, sitting together on the same seat. Defendant was at all times creating just as much peril for himself as he was for plaintiff. Was defendant guilty of humanitarian negligence against himself? Do we now have a new rule of contributory humanitarian negligence? To illustrate this suppose a defendant drives his car into a tree at the side of the road instead of into another car, would his guest have a submissible humanitarian case on the theory that the driver could have stopped or swerved after he was moving toward the tree and failed to do so? I think this demonstrates that a position of peril of being struck by the vehicle operated by the defendant (not danger to defendant himself and a passenger from driving his car against another object) is essential to the applicability of the humanitarian rule and therefore I do not think this rule can properly be extended to cases of a guest riding in a car which is driven into a collision with another car or object, because I would classify such conduct as primary negligence. In this case, plaintiff's theory of peril was peril into which he was being taken by the active negligence of defendant in driving his car into collision with another car. Such peril was being created by the driver as he moved toward the other car. It is my view that it is primary and not humanitarian negligence thus to take another person into such peril, because surely it is primary negligence to create such peril. Further-

more, even that peril of plaintiff, being created by defendant, did not entirely depend upon the acts of the defendant herein, because it could have been eliminated by action of the driver of the other car, and so was peril partly due to an instrumentality that defendant did not control.

Moreover, in this case, plaintiff seems to recognize that he was not in a position of peril required to make the humanitarian rule applicable because his main instruction did not actually submit that plaintiff was in a position of imminent peril but instead that both automobiles "were in imminent peril of striking and colliding with each other and injuring the plaintiff." This instruction only submitted that plaintiff was a passenger in defendant Nicholson's car and seems to assume that this placed plaintiff in a position of imminent peril without specifically requiring such a finding as to plaintiff but significantly as to both automobiles. (Submitting that defendant "could have seen the said automobiles and the plaintiff in said position of imminent peril.") Perhaps it could be held that plaintiff's main instruction did not submit humanitarian negligence at all but only primary negligence in which some usual humanitarian submission terms were used; and that it was not a prejudicially erroneous submission because plaintiff did have and actually submitted a primary negligence case. See Pender v. Foeste, Mo.Sup., 329 S.W.2d 656, 661. The principles for determining defendant's negligence just before reaching a point where defendant could not avoid striking the other car by stopping or swerving (if plaintiff wants it so limited) may be similar to those considered in determining negligence under the humanitarian rule (ability to stop short of collision or to swerve and failure to do so) and plaintiff's main instruction may have been sufficient to submit these as elements of primary negligence in failing to prevent a collision of the two cars. My view is that such a ruling would be a sounder solution of this case than that made by the principal opinion.